HANKINSON v. CHARLOTTE &c. R. R. COMPANY.

1. PLAINTIFF'S CAPACITY—ISSUE—EVIDENCE.—The plaintiff's capacity to sue may be put in issue only by a special denial thereof, or by demurrer in proper cases; but where, under a general denial, the plaintiff undertakes to prove his capacity to sue, this testimony is subject to the same objections as evidence upon other questions, and may be explained and replied to in like manner.

2. GRANT OF LETTERS OF ADMINISTRATION—PROOF.—Under the terms of the statute (Gen. Stat., § 2182), a certified copy of letters of administration is sufficient proof of the judgment of the Probate Court, and the entire record cannot be called for; but the adverse party may put such record in evidence for the purpose of showing a want of jurisdiction.

3. IBID.—IBID.—JURISDICTION.—In action brought by an administrator, the record of the Probate Court in the matter of his appointment may be introduced for the purpose of showing by an inspection of the record that the Probate Court had no jurisdiction, and that, therefore, the grant was

void; but parol evidence of facts not appearing in the record, would be inadmissible in this collateral proceeding.

4. NEGLIGENCE—CHARGING JURIES.—Facts not made negligence by statute, cannot be held by the trial judge to constitute negligence, or contributory negligence, in any case. His duty is to define negligence, and leave it to the jury to say what facts will fill the definition.

5. IBID.—DRUNKENNESS.—Where a man is killed on the track by a moving railroad train, his intoxication at the time should be considered in passing upon the question of his contributory negligence; and also in determining the negligence of the railroad company, if their employees on the train knew of his condition.

6. RAILROADS—TRAVELLED PLACE.—A path across a railroad track used by the public for over twenty years, with the knowledge and acquiescence of the railroad company, but without any adverse assertion of a legal right, does not give to the public a prescriptive right to its use, and thereby make it a "traveled place."[1] The parting of trains when standing at this spot, so as to permit a passage over this path, does not *per se* imply the recognition of a right to its use. MR. JUSTICE POPE *dubitante.*

Before FRASER, J., Aiken, April, 1893.

Action by John H. Hankinson, as clerk of court, as administrator of the estate of Kaoly Ordey, deceased, against the Charlotte, Columbia and Augusta Railroad Company, commenced February 16, 1891, to recover damages for the death of intestate on December 15, 1889. The judge charged the jury as follows:

*Gentlemen of the Jury:* This is a case brought by the administrator of the estate of Kaoly Ordey (I believe that is the name), under the statute which provides that, in case any injury is done to a person, and he dies, certain members of his family are entitled to recover. The claim here is, that Kaoly Ordey was killed by the railroad, and that his son is entitled, under this statute, to damages. Damages are laid for $10,000.

Now, when a person is killed by a railroad, or its cars, worked by its agents or lessees, the company is not absolutely responsible. The company is not an insurer of the lives of its passengers. All it owes to the public or passengers is to exercise due care. They owe that to the passengers on their trains

---

[1] The question of signals at road crossings is discussed in note to 16 L. R. A., at page 119.

and they owe that to the public. At the same time, if the person who is injured contributes to the injury in such a way that, although the company's agents had been negligent, the injury would not have occurred but for the contributory negligence, then the company is not liable.

That applies to ordinary cases. But we have a statute which provides that, under certain circumstances, the railroad companies' employees shall exercise certain precautionary measures, and if they are not carried out—the provisions of the statute—then the want of ordinary care on the part of the person injured is not sufficient to relieve the railroad company. But it must be gross contributory negligence, or wilful contributory negligence. There are two sections of the statute I think I had better read to you: [Here the judge read to the jury sections 1483 and 1529 of General Statutes.]

That is enough of that statute for this case. If any of the signals here provided for are neglected, the law is that, if such neglect contributed to the injury, the railroad company may be liable. The two features in this case are: That the persons in charge of that train were guilty of ordinary negligence or want of ordinary care, in case you find that the deceased was killed, not at a traveled place; and in case you find that deceased was killed at a traveled place, that they were guilty of neglecting the provisions of this statute, that they did not give those signals, and that no ordinary want of care on the part of the deceased would have relieved them—the railroad company—there must have been gross negligence or wilful negligence on the part of the deceased.

I think it is better, in a case that has been argued as thoroughly as this has been, when counsel have formulated propositions of law on which they propose to rely, to confine myself, in charging the jury in the main, to the points that they raised. Sometimes I lay aside these papers and charge the jury generally on the propositions of law which I think material to the case; but in this case I propose to charge the jury upon the requests to charge, with such modifications as I think proper.

The first on the part of the plaintiff is: "That the plaintiff

charges in this case that the deceased, Ordey, was killed by the negligence of the defendant company, said negligence being the violation of certain statutory requirements, and negligence at common law. As to the alleged violation of the statute, the jury is charged that every locomotive engine must be provided with a bell and steam whistle, and such bell shall be rung or such whistle sounded at the distance of at least five hundred yards from the place where the railroad crosses any public highway, or street, or traveled place, and be kept ringing or whistling until the engine has crossed such highway, or street, or traveled place; and if the jury find that the deceased was injured at a place so described because of the neglect to give said signals, and that such neglect contributed to his death, then the corporation is responsible for his death, unless the jury further find that the deceased was guilty of gross or wilful negligence. 'Gross negligence is the absence of that kind of care which even a careless and indifferent person would be expected to exercise under existing circumstances.' A man approaching a railroad at a public highway, street, or traveled place, has a right to rely upon the railroad giving the signals required by statute for that place."

Now, "by the terms traveled place, as used in the statute, is meant a place across which the public not only have been accustomed to travel, but where they have a right to travel; and if the jury find that the deceased was crossing at such a place, then he was entitled to the statutory signals;" and in this connection the jury is charged that, if the public for more than twenty years use a place for crossing a railroad with the knowledge and acquiescence of the company, "then they have acquired the right to cross at such place, and are entitled to the benefit of the statutory signals." With these further qualifications: if, however, the railroad company during twenty years exercised, when it pleased, the right to stop up the path, by allowing the cars to stand across the path at its own will, then the attempted possession of twenty years, within that period which completes the statutory right of way assumed, is broken, and the public has acquired no such right as makes it, the path, a traveled place. By allowing the cars to stand, I

mean, if the railroad company used cars not belonging to loco-
motive trains; I mean to say, cars not for moving trains, but
for standing there—cars when not in use.

And my reason for that ruling is this: That even upon a pub-
lic highway, the railroad company has a right to cross that
highway, and the fact that it crosses that highway over it, does
not stop it, nor prevent the public from using it.  But a place
which the public claims to be a traveled place, and which they
have a right to, if the railroad company allows its trains, while
in motion, to stand there, the public would have no more right
to interfere than they would to prevent the railroad company
from making use of a public highway; but if they stop their
cars there, and stand there when not in use, then, if the public
have any right as a traveled place, they have some right of
action against the railroad company, to prevent it so obstruct-
ing the place.  If it is a place that the public had acquired a
right to, the railroad company had no right to use it, except
for passing or moving trains.  Whether there has been any
such use of this place, is a question for the jury.

Second.  "The jury is charged that, outside of any of the re-
quirements of the statute and at common law, negligence is the
absence of ordinary care, and the jury must determine whether
the facts proven before them amount to negligence.  Whether
or not prudence required that at the place in question, if, in a
town like Graniteville, as you may find Graniteville to be from
the testimony, some signals should be given of an approaching
train, and whether such signal was given, is a question of fact
for the jury."  If you know from the testimony what sort of a
place Graniteville was, what number of people collect there
about the train, then you must take all that, as well as all the
surrounding circumstances of the case, when you come to con-
sider what is proper care.  What is proper care under some
circumstances is not proper under others; and this is a question
for the jury—ordinary care.

As to contributory negligence: "The jury is charged, it is
not to be assumed that a man in his senses will heedlessly im-
peril his own life.  Culpable negligence of the plaintiff's intes-
tate, properly so called, which contributed to the injury, must

always defeat the action; but the nature of the primary wrong has much to do with the judgment, whether or not the contributory fault was of a negative character, such as lack of vigilance, and was itself caused by, or would not have existed but for, the primary wrong, it is not in law to be charged to the injured one, but to the original wrongdoer." That is the law of our own Supreme Court.

Now, there are some requests to charge on behalf of the defendant: "*First.* If the jury find from the testimony that Ordey, the person killed, was on defendant's railroad track, attempting to cross it in either direction, and that the place on the track where he attempted to cross and was struck by the locomotive, was not a public crossing, street, or traveled place, but was only near to it, or a short distance therefrom, the defendant was not under any statutory duty toward Ordey to blow its whistle or ring its bell." That is, if he was not on a traveled place, no matter how near he may have been to it, he was not entitled to have these signals given. If a man is traveling on a public highway, and the cars are passing, the law gives him the protection in requiring those signals; and if he is injured on the public highway, then the want of those signals would entitle him to the protection of the law. But if, instead of crossing on the public highway, although very near the highway, if he gets off of it ten or fifteen feet one side or the other, the law does not protect him; it does not entitle him to have that whistle blown unless he was on the public highway, or traveled place, which the law does intend to protect.

*Second.* I think I will give you my views without repeating it. There is a great deal of this that I think requires me to assume that certain facts have been established, and to indicate an opinion as to what does, or does not, constitute negligence. So I will not charge you but the last part of it: "If the jury should find from the evidence that Ordey, the deceased, when about to cross the railroad track (not at a traveled place), could, by looking and listening, see and hear the approaching train, and failed to do so; and if they further believe that an ordinarily prudent person, under like circumstances, would have looked and listened, then Ordey was negligent (and if,

under the circumstances, he attempted to cross the track and was injured), the plaintiff cannot recover." I think that is good law. That is a restatement of the law. Every fact which goes to make up care, or want of care, is for the jury to find, and it is also for the jury to say whether the facts they find to be established, do or do not constitute negligence. I have no right to tell you any one particular thing makes negligence, or any dozen. These requests to charge are in two sets of papers, and not very easy to get at.

"3. If the jury should find from the evidence that the place where the deceased, Ordey, was killed, was not a public crossing nor traveled place, in the sense of the statute," as I have described it to you, "and that the train was running from twelve to fifteen miles an hour, and no whistle was sounded nor bell rung, yet if they further believe that Ordey could, by listening and looking, by the exercise of ordinary care, could have seen or heard the approach of the train, and an ordinary prudent person would, under the same circumstances, have looked and listened," and could have thereby avoided the injury, "the plaintiff cannot recover; if he neglected to do so, and attempted to cross the track, and while doing so received the injury which caused his death, then, if you think that that was a want of ordinary care on his part, he would not be entitled to recover." There is no rule of law absolving a person from exercising proper care in crossing a railroad track, and he is bound to use ordinary care, and he is also bound to make a reasonable, proper use of ordinary care, of all his faculties which were intended by nature for that purpose.

3a. If the jury believe from the evidence that the deceased, by using ordinary care, could have seen or heard the approaching train, and that he attempted to cross the track without the exercise of ordinary care, and while so doing he was killed, then, under such circumstances, he would be guilty of contributory negligence, and the verdict should be for the defendant. Now, that is assuming that you find that he was not on a traveled place, nor a public highway nor street. That, should the jury find from the evidence, that the place on the track where Ordey was struck was not a traveled place or public crossing,

as defined by the courts, and that the train was running twelve to fifteen miles an hour, and no whistle was sounded or bell rung, and yet if Ordey could, by looking and listening, see and hear the train, and an ordinarily prudent person would, under the same circumstances, have looked and listened, and could thereby have obviated the injury, the plaintiff cannot recover, for Ordey *would be guilty of contributory negligence.* There are certain assumed facts here based upon a contingency.

The next request to charge indicates an opinion, under certain circumstances described, laid down, and specified in that request to charge, in which I should say to the jury that greater care on the part of the plaintiff is necessary. I think, gentlemen of the jury, that would be invading your province. All I could say is, that what is proper care is entirely for the jury. Under certain circumstances, what would be proper care for one, would not under other circumstances. Take the nature of the place, the time, the night, the time of night, the number of persons that would be there, the condition of the track, and everything which may have been brought here to your attention, and say, under all these circumstances, what would be care.

4. "That even if the jury should find that the statutory signals were not given, that does not make the company liable, if Ordey knew, without such signals, that the train was approaching, yet, notwithstanding such knowledge, he attempted to cross in face of the engine; and if the jury believe that the most careless and indifferent person, under the same circumstances, would not have attempted to cross, then the plaintiff cannot recover." In other words, that is a different definition of gross carelessness I gave you under the plaintiff's requests to charge.

5. "If you find from the evidence that Ordey was intoxicated at the time of the accident to him, that fact will not only not relieve him from the consequences of his act in attempting to cross the railroad track, but if his intoxicated condition was the cause of his going upon the railroad, you may consider it (as proof of contributory negligence)—in considering the question of contributory negligence, you may consider that fact of

his being drunk, if he was drunk, in considering the question of contributory negligence.'' I cannot go any further than that. ''And if, under the circumstances, the most careless and indifferent person, in his sober senses, would not have attempted to cross the track at that time, and that the drinks Ordey had taken had made him careless and indifferent to consequences, and had produced in him the absence of care, which a sober man, however careless and indifferent, would have exercised under the circumstances, then the plaintiff cannot have a verdict, because Ordey, in law, was grossly negligent, and your verdict must be in favor of the railroad company, although you may believe from the evidence that no signals whatever were given by the train that struck him, and that he was on a public crossing or traveled place.'' I think that is law, with this further statement. I charge you, in other words, that what is gross negligence on the part of a sober man is gross negligence on the part of a drunken man, unless in some way the defendant's agents and servants know of the drunken condition of the deceased. In other words, drunkenness is no excuse, unless the persons know of his condition, know the man is drunk. And if a man who is drunk does an act which would be gross negligence on the part of a sober man, that would be gross negligence on the part of a drunken man.

6. ''But should you find that Ordey was not on a public crossing or traveled place, as the court has defined it to be, and you further find that he was under the influence of liquor of some kind, and that such condition contributed to cause him to attempt to cross the track at the time; and if you further find that a sober man, by the exercise of proper ordinary care, could have seen or heard the train, if he had looked or listened, and have avoided the injuries from the engine, then the plaintiff cannot have a verdict.'' I think that is right. In other words, I think the drunkenness of Ordey, under the circumstances of the case, unless in some way brought home to the knowledge of the agents of the railroad company—engineer, conductor or fireman, or those who had charge of the train—in time to prevent the injury, I don't think would have anything

to do with it.  It may help you determine what the facts were.

The damages are laid at $10,000.  But it is for you to say what is reasonable value to the son, if you find that the plaintiff is entitled to recover.  If you find for the railroad company, you will say, "we find for the defendant."

The jury returned a verdict for the plaintiff for $3,000.  A motion upon the minutes of the court for a new trial was made, but the same was refused.  Thereafter judgment was duly entered upon said verdict.

Defendant appealed on the following exceptions:

1.  Excepts because the presiding judge erred in charging the jury that "a man approaching a railroad at a public highway, street or traveled place, has a right to rely upon the railroad giving the signals required by statute for that place."

2.  Excepts because the presiding judge erred in charging the jury that "if the jury find that this place was used for more than twenty years by the public with the knowledge and acquiescence of the company, then they have acquired the right to cross at such place, and are entitled to the benefit of the statutory signals," when he should have charged that, before the place could become a traveled place, in the sense of the statute, the use by the public must have been the assertion of a right adverse, inconsistent, and hostile to the uses and rights of the defendant, and the mere knowledge and acquiescence of the company that people crossed the railroad track at that point, did not operate so as to create an easement to cross at such point by the public.

3.  Excepts because the presiding judge erred in not charging defendant's first request, which was as follows [quoting it], without qualification as presented, but erroneously defined the distance a person might be off the traveled place before one loses the protection of the statute.

4.  Excepts because the presiding judge erred in refusing to charge defendant's second request as presented, which was as follows: "2d.  If the jury should find that the track, at the point where the accident occurred, was not a public crossing, street, or traveled place, then the law applicable is as follows: It is

the duty of a person, whether on foot or mounted, to exercise a care for his own safety in approaching a railroad track, and especially to look and listen before attempting to cross the track; and where the view of the line of the road is obstructed, or the crossing is, in other respects, specially dangerous, it becomes the duty of such person to exercise a higher degree of care; and if he cannot, by looking and listening, satisfy himself that it is prudent to cross the track, he must stop and ascertain the fact, whether a train is approaching, or not. So that, if the jury should find, from the evidence, that Ordey, the deceased, when about to cross the railroad track, could, by looking and listening, see and hear the approaching train, and failed to do so; and if they further believe that an ordinarily prudent person, under like circumstances, would have looked and listened, then Ordey was negligent, and the plaintiff cannot recover."

5. Abandoned.

6. Abandoned.

7. Excepts because the presiding judge erred in not charg-ing the defendant's fifth request to charge as presented, which was as follows [quoting it].

8. Excepts because the presiding judge erred in charging the jury that what is gross negligence on the part of a sober man is gross negligence on the part of a drunken man, unless in some way defendant's agents and servants knew of the drunken condition of the deceased; in other words, drunkenness is no excuse, unless the person knew of his condition— knew the man is drunk.

9. Excepts because the presiding judge erred in not charging defendant's request, numbered 1a, which was as follows: "1a. In order to constitute a public crossing or traveled place across a railway, under the statute, the proof must satisfy the jury that the place claimed to be such crossing is either a public highway or that it is a crossing which the public had acquired a legal right to, by uninterrupted and constant use of for the period of twenty years, and without admitting the right of, or suffering the railroad company during that time to stop or in-

terfere with such right, or that the railway company had granted such right."

10. Excepts because the presiding judge erred in not charging defendant's request, numbered 2a, as presented, which was as follows: "2a. Even if the jury should find that persons had been accustomed to cross the railway track at the point where the deceased, Ordey, was killed, this would not constitute a 'traveled place,' in the sense of these terms as used in the statute, unless it was shown that the railway company knew of, and acquiesced in, the use of its track;" and he further erred in modifying the same by adding thereto the following words: "And failure to object is sufficient acquiescence."[1]

11. Abandoned.

12. Excepts because the presiding judge erred in not charging defendant's request, numbered 5a, as presented, which was as follows: "5a. If the jury believe from the evidence that the deceased, by looking or listening, before he crossed the railroad track, could have seen or heard the approaching train, and that he attempted to cross the track without looking and listening, and while so doing he was killed, then, under such circumstances, he would be guilty of contributory negligence, and the verdict should be for the defendant."

13. Excepts because the presiding judge erred in not charging defendant's request, numbered 6a, as presented, which was as follows: "6a. If the jury believe from the evidence that from the nature of the track, or that there were obstructions which made it difficult for a person to see or hear an approaching train at the place where the deceased, Ordey, was killed, then the deceased was required by law to use a greater degree of care before crossing at such place than he would have been required to use had there been no obstruction to prevent him from hearing or seeing the train."

14. Excepts because the presiding judge erred in overruling the objection of defendant's attorney to the certified copy of the letters of administration of the plaintiff; and he further erred in not requiring the plaintiff to introduce the record in the

---

[1] Not charged at all, but the modification was written into the request by the judge.

probate office for Aiken County, out of which said letters of administration purported to have been issued, and in admitting the same in evidence without the production of said records.

15. Excepts because the presiding judge erred in refusing to allow the plaintiffs [defendants] to introduce in evidence the record of the Probate Court of Aiken County whereon letters of administration had been granted to the plaintiff.

16. Excepts because the presiding judge erred in holding that the certificate of the letters of administration introduced in evidence by the plaintiff was conclusive upon it, and that the defendant could not introduce the records of the Probate Court where the letters of administration were granted, for the purpose of showing that upon the face of that record the court had no jurisdiction, and the letters so granted were a nullity.

17. Excepts because the presiding judge erred in refusing to allow the defendant to prove by the witness Gaston that the deceased was not a citizen or a resident of the State of South Carolina, or of Aiken County, or had any abode in said county whatsoever; and that neither at the time of his death nor afterwards did he have any property, assets, effects, or debts due him or his estate whatsoever, and other facts which would take the case out of the statutes of the State, giving the Court of Probate for Aiken County jurisdiction; but instead thereof, he erred in ruling that the certified copy of letters of administration were conclusive upon the court, and that he could not go behind such certified copy.

*Messrs. B. L. Abney* and *J. P. Thomas, Jr.*, for appellant.

*Messrs. Henderson Bros.* and *John R. Oloy*, contra.

March 12, 1894.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to recover damages, for the benefit of deceased's minor son, sustained by reason of certain injuries received by the intestate while crossing the track of the defendant company, by a collision with the train, which resulted in his death.

The plaintiff, in the first paragraph of his complaint, alleged that he had been duly appointed administrator of the derelict

estate of the said Kaoly Ordey, who was killed by the negligence of the defendant company, on the 15th of December, 1889, at Graniteville, in the County of Aiken, in the State of South Carolina, and then and there died intestate, leaving as his only heir at law and distributee, his son, Alphonse Ordey, for whose benefit this action was brought. The negligence, as alleged in the complaint, is, that the intestate, in the pursuit of his business, was crossing the track of the defendant company, at "a traveled place" on said track, "when the defendant carelessly, unexpectedly, and negligently, and without proper warning and due and reasonsble precaution, and without giving the signals required by section 1483 of the General Statutes of South Carolina, and without ringing its bell or sounding its whistle, caused one of its locomotives, which was drawing a train of cars, to rapidly approach the said intestate, Kaoly Ordey, and struck him, and so injured him that death ensued therefrom a few hours afterwards." The defendant answered, relying, as a first defence, on a general denial of each and every allegation in the complaint. For a second defence, contributory negligence on the part of intestate was pleaded.

At the opening of the case, defendant's counsel were asked by the court the following question: "You don't admit the first allegation of the complaint?" To which the reply was: "No, sir." Counsel for plaintiff then offered in evidence a certified copy of the letters of administration granted by the judge of probate of Aiken County to the plaintiff. To this evidence counsel for defendant objected, claiming that he denied the appointment of the administrator, upon the ground, as it would appear, that the probate court had no jurisdiction to make such appointment; and that if the whole record of the proceedings in the Court of Probate leading up to the alleged grant of administration were produced, such record would show that the Court of Probate had no jurisdiction to grant such letters of administration. The objection was overruled and the paper admitted, the Circuit Judge holding that the statute (section 2182, General Statutes,) made the certificate evidence.

It seems, also, that in developing the testimony on the part

of the defence, John T. Gaston was examined, and after stating that he was judge of probate for the County of Aiken, and as such had granted the letters of administration to the plaintiff, he was asked to produce the record of the proceedings in the Court of Probate which culminated in the grant of the letters of administration, which was objected to on the ground that the certified copy of the letters of administration, which had been received in evidence, could not be attacked in any way in this court, for that would be a collateral attack. Counsel for defendant also stated that he proposed to prove by this witness, outside of the record, that the real facts of the case, and which were brought before him as probate judge, were such as would not give him jurisdiction; the facts desired to be brought out being that Ordey was not a citizen or resident of Aiken County, but was a transient person, passing through said county at the time he was killed, and that he had no property or assets of any kind in said county.   The objection was sustained, the Circuit Judge holding that he could not go behind the certified copy of the letters of administration in this proceeding, for that paper, under the statute, is conclusive in this court.   On the next day after this ruling was made, and after the testimony was closed, the Circuit Judge stated that, in addition to the reasons given for his ruling at the time, he would hold that, as no point was raised in the answer or by a demurrer as to the capacity of the plaintiff to sue, it could not now be raised.

The testimony in the case was very voluminous and conflicting, as to whether the statutory signals were given, as to whether the deceased was guilty of contributory negligence, as to the alleged intoxication of the deceased at the time of the disaster, as to the character of the crossing where the injury was alleged to have been sustained, whether, or not, it was "a traveled place," in the sense of the statute, and other issues. The jury rendered a verdict in favor of the plaintiff, and judgment having been entered thereon, the defendant appeals upon the several grounds set out in the record.

It seems to us that these grounds may be divided into the following classes, viz: 1st. Those which assail the rulings of

the Circuit Judge in respect to the admissibility of the certi-
fied copy of the letters of administration, and of the whole
record of the Court of Probate under which such letters were
granted.   2d.  As to the charge and refusals to charge by the
Circuit Judge in respect to the negligence imputed to the de-
fendant, and of the contributory negligence imputed to the
plaintiff.   3d.  As to the effect of the alleged intoxication of
the plaintiff at the time he receceived his death wounds.   4th.
As to the question whether the crossing was "a traveled place,"
in the sense of the statute.

*First.* As to the admissibility of the evidence adduced, and
offered and rejected, as. to the right of the plaintiff to the
character in which he sues.  But before proceeding to a
consideration of the merits of this question, it will be
necessary to determine whether the additional reason
given by the Circuit Judge for his rulings in this respect is
well founded.   That reason seems to have been, that as the
defendant raised no question, either by demurrer or answer, as
to the capacity of the plaintiff to sue, he cannot be permitted
to do so afterwards.   There can be no doubt, under the deci-
sions in this State (*Commercial Insurance &c. Company* v. *Turner*,
8 S. C., 107; *Steamship Company* v. *Rodgers*, 21 *Id.*, 27; *Palmetto
Lumber Company* v. *Risley*, 25 *Id.*, 309), that the issue of the
capacity of plaintiff to sue cannot be raised by a general denial
of all the allegations of the complaint, but must be raised either
by demurrer, where the necessary facts appear on the face of
the complaint, or by a special denial in the answer; and in the
absence of any such demurrer, or special denial, the allegation
in the complaint as to the character in which plaintiff sues,
must be regarded as admitted.   But in this case, the plaintiff,
not relying upon the implied admission arising from the want
of any demurrer or special denial in the answer, saw fit to offer
evidence showing that he was the duly appointed administrator
of the intestate.   When such evidence is offered, it seems to
us that it is open to any legal objection to which it may be
amenable, just as any other evidence which the plaintiff may
offer; and, what is more, it opens the door to any other evi-
dence which the defendant may offer, provided it is competent

in reply to, or in explanation of, that which the plaintiff has introduced.

It is true that section 2182 of the General Statutes does provide that a certified copy of the letters of administration "shall be sufficient evidence of the appointment of such executor or administrator in any court in this State," but that statute only supersedes the necessity of introducing the whole record of the proceedings in the Court of Probate, which would otherwise have been necessary. For the letters of administration amount, practically, to a judgment of the Court of Probate, rendered on proceedings, of record in that court, instituted for that purpose, and, in the absence of any statute upon the subject, the general rule would require that the whole record of the proceedings, culminating in a judgment, would have to be introduced in order to prove the judgment. But the statute having provided that a certified copy of the letters should be sufficient evidence of the appointment of the administrator, we must hold that there was no error in receiving the certified copy in evidence, notwithstanding the fact that it was insisted by counsel for defendant that the whole record, if introduced, would show a lack of jurisdiction on its face. When, however, the defendant, while introducing its own testimony, offered the whole record in evidence, for the purpose of showing that the court issuing the alleged letters of administration had no jurisdiction to do so, then the question assumes a totally different aspect. If the proposition had been to offer evidence that the alleged certified copy of the letters of administration was a forgery, we can scarcely suppose that there would be any doubt of the admissibility of such evidence, for that would be to show that the alleged letters were not what they purported to be, and were not what the statute contemplated. So, too, any competent evidence, showing that the court undertaking to grant such letters of administration had no jurisdiction to do so, would be alike admissible; for if the court had no jurisdiction, then the alleged letters of administration would be mere nullities, and surely the certified copy would be no better.

It is contended, however, that the judgment of the Court of Probate, evidenced by the certified copy of the letters of ad-

2—41

ministration, cannot be attacked in this collateral proceeding. That depends upon whether the judgment in question is absolutely void or is merely voidable. If the former, then it is a mere nullity, and may be so treated wherever it is encountered; but if the latter, then it cannot be attacked in any collateral proceeding, but must be avoided, that is, rendered void, by some direct proceeding instituted for that purpose. As we understand it, the test whether a judgment is void, or merely voidable, for want of jurisdiction, is whether the lack of jurisdiction appears upon the face of the record, or where the infirmity must be shown by evidence outside of the record. In the former case it is absolutely void, for in such a case no inquiry is necessary to show what appears on the face of the record, while in the latter case such inquiry is necessary to ascertain the facts showing the lack of jurisdiction. These principles are fully sustained in the case of *Turner* v. *Malone*, 24 S. C., 398. Now, as defendant's counsel proposed to introduce the entire record, claiming that it would show upon its face a lack of jurisdiction, we think the Circuit Judge erred in refusing to receive such evidence when offered for that purpose. What the record would really show, we are not informed. If it should show that there was a lack of jurisdiction, then it was competent; but if, on the contrary, it should not show any want of jurisdiction, then no harm would be done, as it would not avail the defendant anything. We desire to add, however, in view of the fact that defendant's counsel also proposed to show, by parol evidence, outside of the record, other facts tending to show a lack of jurisdiction in the Court of Probate, which undertook to grant the letters of administration, that we do not hold that such parol evidence would be admissible; and, on the contrary, we think that, under the principles hereinabove announced, such evidence would be inadmissible in this proceeding.

*Second.* As to the various exceptions to the charge and refusals to charge, we think that none of them can be sustained. Looking at the charge of the Circuit Judge as a whole, as it must be, we think a careful examination of it will show that the various points excepted to are either em-

braced in the charge, though stated in different phraseology, or that the exceptions are based upon a doctrine, which, while it seems to prevail elsewhere, as shown by the authorities cited by counsel for appellant, has never been recognized in this State; and, for the purpose of showing this, the entire charge of the Circuit Judge, together with appellant's exceptions, should be embraced in the report of this case. The doctrine thus referred to is this, that the Circuit Judge, when requested so to do, is bound to charge that certain facts, which have been recognized as sufficient evidence of negligence on the one hand, or contributory negligence on the other, are sufficient evidence of such negligence; but that doctrine has never been recognized here, mainly for the reason that it involves a violation of our constitutional provision which forbids a judge from charging on the facts. On the contrary, the rule here is, that while the judge is bound to instruct the jury as to what is negligence, in its different degrees, he is not allowed to say to the jury that any particular fact or facts are sufficient to prove negligence, or contributory negligence. As was held in *Petrie* v. *Railroad Company*, 29 S. C., at page 322, reaffirming the same doctrine previously laid down in *Bridger* v. *Railroad Company*, 25 S. C., at pages 30, 31: "The rule, as we understand it, is, that the province of the judge is to give the jury a definition of the term negligence, or gross negligence, and then it is the exclusive province of the jury to determine whether the facts proved in a given case constitute negligence, or gross negligence;" and the same doctrine applies to contributory negligence. Of course, exceptions to this general rule may be, and have been, established by statute; as, for example, that the failure of a railroad company to ring the bell or blow the whistle within a prescribed distance before the train reaches a crossing of any public highway, &c., shall, of itself, constitute sufficient proof of negligence.

*Third.* As to the effect of the alleged intoxication of the plaintiff's intestate, we see no error in the charge. The Circuit Judge could say no more than what he did say upon that subject, to wit: That if the man was intoxicated, that fact could and should be taken into consider-

ation by the jury in determining the question of contributory negligence. It seems to us a misconception of the charge to suppose that the jury could have been so misled by the language, as to believe that if the drunkenness of the deceased was known to *any* agent of the defendant company, as, for instance, the station agent at Graniteville, that could affect the question; for, in the same connection, the jury were explicitly told that the agents referred to were the "conductor, engineer, or fireman, or those who had the charge of the train." The very obvious meaning of the charge was, that if those who were in charge of the running of the train which caused the disaster, should see a drunken man staggering on the track, the plainest instincts of humanity should prompt them to more care in approaching such a person while on the track, as he would be less likely to be able to get out of the way than a sober man in full possession of all his faculties.

*Fourth.* As to the question as to what would constitute "a traveled place," in the sense of the statute, it seems to us that the Circuit Judge was somewhat in error. The rule, as we understand it, is, that to constitute "a traveled place," it must not only be a place where persons are *accustomed* to travel, but it must also be a place where persons have, in some way, acquired *the right* to travel. *Hale* v. *Railroad Company*, 34 S. C., at page 299, affirmed in *Barber* v. *Railroad Company*, 34 S. C., at page 450. Now, while the Circuit Judge seems to have recognized this rule, yet when he proceeded to instruct the jury as to how this right might be acquired, it seems to us that he erred. The fact that all persons who desired to do so had been accustomed to use the footpath at the crossing in question, with the knowledge and acquiescence of the railroad company, was not, of itself, sufficient to establish the legal right to cross; but there must be something more, something to show an *adverse* use of the crossing, or something to show that the railroad company recognized *the right* of the public to cross at the point in question.

The same principles which govern where the question is as to an alleged right of way over the lands of a landholder, acquired by prescription, must govern here. There the doctrine

is that the mere fact that persons have, for any number of years, been accustomed to use the way in question, is not sufficient, but there must be something to show that such use was of an *adverse* character, or that the owner of the soil had in some way recognized the *legal* right of persons to use the way. *Rowland* v. *Wolfe*, 1 Bail., 56; *McKee* v. *Garrett, Ibid.*, 341; *Golding* v. *Williams*, Dudley, 92. It is true, that in the subsequent case of *Sims* v. *Davis*, Cheves, 1, some dissatisfaction was expressed with the cases above cited from Bailey, but only so far as they were supposed to hold that no right of way by prescription could be acquired over the *unenclosed* lands of another, and the case in no way modifies the rule we have laid down. On the contrary, the case from Cheves lays down the rule as follows: "that the use of every such way is permissive, or held at sufferance, where the claimant has done no act showing that he claimed the right adversely, and the allowance of the use by the owner of the soil has been unaccompanied by any act which shows a recognition on his part of the right of the claimant to use the road without his permission." See, also, *Gibson* v. *Durham*, 3 Rich., 85.

There being some evidence tending to show that the railroad company was accustomed to separate their cars, when left standing on the track for any length of time, for the purpose of leaving an opening for persons to cross the track at the point in question, the Circuit Judge instructed the jury that, if "the railroad company during the twenty years exercised when it pleased the right to stop up the path, by allowing the cars to stand across the path at its own will, then the attempted possession of twenty years, within that period which completes the statutory right of way assumed, is broken, and the public has acquired no such right as makes it, the path, a traveled place." But this instruction necessarily implied that if the path was not stopped up at the pleasure of the company, then the public would acquire the right, without any other evidence of adverse use, or recognition of the right of the public by the company. This we cannot approve, as it may be that the opening was left as a mere matter of accommodation to the public, unless there was some evidence tending to show (as there was not) that the

opening was left upon the demand of persons accustomed to use that path, for that would imply a recognition of the right to use the path. Observation and experience show that it is quite a common thing to find well beaten paths not only immediately alongside of the track of a railroad, but crossing such track at various points along the line, which are freely used by all persons desiring to do so, which use must be presumed to be known to the railroad company through its agents and servants, and we think it would never do to hold that such use, if continued for the requisite length of time, would ripen into a legal right.

By reason of the errors indicated, the judgment below must be reversed and a new trial granted. The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for a new trial.

MR. JUSTICE POPE. I prefer to base my concurrence in the judgment of this court, granting a new trial upon the error of the Circuit Judge in refusing to allow the defendant to introduce in testimony the record from the Probate Court for Aiken County, in the matter of administration upon the estate of plaintiff's intestate. I have doubts as to so much of the opinion of the court relating to the rule of law touching crossings used by the public over defendant's railroad track, where such crossings are located at or near a station where passengers are invited to enter and get off the passenger trains of such railroad.