8698; 8811

SANDERS v. SOUTHERN RAILWAY—CAROLINA DIVISION.

(81 S. E. 786.)

RAILROADS. ACCIDENT AT 'CROSSING. TRAVELED PLACE. OMISSION OF STATUTORY SIGNALS. APPEAL AND ERROR. CHARGE.

1. A complaint which alleged that the plaintiff was injured by a rail-. road train, while at a traveled place, without anything to show that it was not an ordinary public crossing, and also alleged that the bell was not rung, nor any other precaution taken to avoid injuring plaintiff, when construed liberally, as required by Code Civil Procedure, sec. 209, states 'a cause of action, under Civil Code, secs. 3222, 3230, requiring the ringing of the bell before the train reaches

_____

FOOTNOTE—Upon the question of the liability of a railroad company for personal injuries from negligent operation of trains to person on adjoining property or highway, see note in 31 L. R. A. (N. S.) 980. And as to the effect of posting signs warning trespassers on the liability of a railroad company for injury to persons walking on track, see note in 47 L. R. A. (N. S.) 506.

a place where the railroad crosses any public highway, or street, or traveled place, and allowing recovery by the person injured through the failure to give such signals.

2. One who is injured while walking along a path on a railroad right of way cannot recover, under Civil Code, secs. 3222, 3230, allowing a recovery for injuries resulting from failure of a railroad train to give the required signals before crossing a traveled place, where the only evidence of the right to use such path was that the public had used it for more than 20 years, since the public cannot acquire a prescriptive right to the use of a railroad right of way in a manner inconsistent with the right of the company, and the term "traveled place," in the statute, means a place where the public have, in some manner, acquired the legal right to travel; that is, a right which may be legally enforced, and cannot legally be denied, or interfered with.

3. Where the evidence did not entitle plaintiff to recover under the crossing signal act (Civil Code, secs. 3222, 3230), which allows such recovery unless the plaintiff was grossly or wilfully negligent, a charge submitting the case to the jury as a case under the statute was prejudicial.

4. Where there was no evidence that plaintiff was entitled to use a path along a railroad right of way which he was using at the time of his injury, an instruction submitting to the jury the question whether he had a right to be on such path was prejudicial as authorizing the jury to find that he was legally entitled to be there, and as failing to submit to them the issue whether he was a licensee or a trespasser.

Before Frank B. Gary, J., Charleston, May, 1912. Reversed.

Action by Darby L. Sanders, as administrator, against Southern Railway—Carolina Division. From judgment for plaintiff, defendant appeals.

Messrs. *Joseph W. Barnwell* and *B. L. Abney,* for appellant, cite: *As to statutory cause of action:* 1 Code of Laws 2132, 2139; 41 S. C. 86; 91 S. C. 546; 41 S. C. 1. *No evidence of statutory traveled place:* 67 S. C. 499; Jones, Easements, sec. 281; 85 S. C. 442, 444. *Harmless error:* 93 S. C. 395. *Common law cause of action:* 61 S. C. 556. *Licensee:* 67 S. C. 499. *Trespasser:* 90 S. C. 262.

*Messrs. Logan & Grace,* for respondent, cite: *Exceptions too general:* 82 S. C. 328; 88 S. C. 83; 63 S. C. 528; 68 S. C. 62.    *Traveled place:* 67 S. C. 499; 41 S. C. 20; 85 S. C. 440; 92 S. C. 291.    *Remedy for indefiniteness:* 84 S. C. 140; 91 S. C. 548; 78 S. C. 324.    *Failure to give statutory signals in common law action:* 52 S. C. 328; 57 S. C. 54; 92 S. C. 301; 92 S. C. 171.

April 21, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

While Robert Sanders was walking along defendant's right of way, going from Columbus street to Line street, in the city of Charleston, he was knocked down and run over by a box car, which was being pushed by a switch engine, and his leg was cut off.   He recovered judgment against defendant for $12,500 damages for the injury.   He died a short time after the verdict was rendered, and the action was continued in the name of the plaintiff, as administrator of his estate.

That part of defendant's right of way which lies between Columbus street and Line street is a parallelogram in shape It is about 39 feet wide, and the distance between the streets is 491 feet.   Besides the main track, it has on it five side-tracks and numerous switches connecting them with each other and with the main track.   It is a part of defendant's switch yard, where switching is constantly being done. The west end of a public court, called Addison's court, which is 18 feet wide, abuts on the right of way about two-thirds of the distance from Columbus to Line street.   This is in a populous part of the city, and, for more than 20 years, the public has used that part of defendant's right of way for a walkway between said streets, and between Addison's court and the streets.   Whether they did so with the knowledge and acquiescence of the railroad company, and were licensees, or against its objection and in spite of its

notices forbidding such use, and were trespassers, was one of the issues of fact which was hotly contested at the trial in the Court below.

The first question presented by the appeal is whether the allegations of the complaint are sufficient to bring the case under the crossing statutes (sections 3222 and 3230 of the Civil Code of 1912).

Section 3222 requires that the bell shall be rung or the whistle sounded 500 yards from the place where the railroad crosses "any public highway or street or traveled place," and be kept ringing or whistling until the engine has crossed the same.

Section 3230 reads: "If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding section, unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law; and that such gross or wilful negligence or unlawful act contributed to the injury."

The second and third paragraphs of the complaint are as follows:

"(2) That on or about the 8th day of August, 1907, at and between the hours of 5 and 6 o'clock p. m., the plaintiff above named, while on the east side of said defendant corporation's railway track, and at a point between Addison court, a public court in the city of Charleston, and Line street, a public street in the city of Charleston, and while at a traveled place and walkway and place where all people and the public in general have been passing and repassing

for more than 20 years last past, and at. a point where said defendant's railway track traverses a populous part of the city of Charleston, and a place much frequented by people passing to and fro along said railway going from Columbus street, one of the public streets of the city of Charleston, and from Addison's court, a public court in the city of Charleston, to Line street, another public street in the city of Charleston, all of which facts were. well known to the defendant and its agents, servants and employees; the said defendant corporation, its agents and servants, so negligently, recklessly, carelessly and wantonly ran, managed and operated one of its trains of cars that said train of cars approached said traveled place or walkway and populous part of the city of Charleston at a high and dangerous rate of speed, and without giving any signal by ringing the bell, so that the said plaintiff might have been made aware of the approach of said train of cars, or taking any precaution whatever to avoid injuring said plaintiff, so that said plaintiff was unaware of the approach of said train of cars, and said train of cars struck said plaintiff with terrific force and violence, crushing and mangling plaintiff's leg, and bruising and injuring his face, and shocking his whole system.

"(3) That the injuries to the plaintiff as aforesaid were caused to the plaintiff by the negligence, carelessness, recklessness, and wantonness of the said defendant corporation, its agents and servants, in approaching said traveled place or walkway and populous part of the city of Charleston at a high and dangerous rate of speed, and in not giving any signal by ringing the bell of said locomotive or taking any precaution whatever to avoid injuring said plaintiff."

Taking the foregoing allegations without the explanatory aid of the evidence showing the location of the right of way, the streets, and Addison's court, it could not be said with certainty that the place where plaintiff's intestate was injured was not an ordinary crossing. Therefore, in view of the allegation which is repeated several times, that plain-

tiff was injured at "a traveled place," and that he was run down without any signal by ringing the bell or taking any precaution whatever to avoid injuring him, and giving these allegations a liberal construction, as we are required to do by the Code of Procedure (section 209), we think it clear that the complaint makes a case under the statutes.

In *Easterling* v. *Railroad Co.,* 91 S. C. 546, 75 S. E. 133, the complaint alleged that Easterling "was crossing a public crossing and traveled place" when he was struck and killed by an engine and train of cars operated by the defendant railroad company. And it was alleged that his death was caused by the negligence, etc., of the defendant in "failing * * * to give any signal by ringing the bell or sounding the whistle or in any other way whatsoever of the approach of said locomotive and train of cars to said public crossing or traveled place." Those allegations were held sufficient to bring the case under the statute. The Court also said that if the allegations were so indefinite as to leave the matter in doubt, the remedy was by motion to make the complaint more definite and certain. That case seems to be conclusive of the question.

We think, however, that the Court erred in submitting the case to the jury as one under the crossing statute, because the testimony failed to sustain the allegation that the injury occurred at a traveled place. In several cases this Court has defined a traveled place to be one where people are not only accustomed to travel, but also have, in some way, acquired a legal right to travel. *Hale* v. *Railroad Co.,* 34 S. C. 299, 13 S. E. 537; *Barber* v. *Railroad Co.,* 34 S. C. 450, 13 S. E. 630; *Hankinson* v. *Railroad Co.,* 41 S. C. 20, 19 S. E. 206; *Strother* v. *Railroad Co.,* 47 S. C. 375, 25 S. E. 272; *Risinger* v. *Railroad Co.,* 59 S. C. 429, 38 S. E. 1; *Kirby* v. *Railroad Co.,* 63 S. C. 494, 41 S. E. 765.

When we speak of a legal right, we mean a right of such nature that it can be legally enforced, and cannot be lawfully denied or interfered with. There is no evidence that

the public or the plaintiff's intestate had acquired any such right to travel where the injury occurred. The only evidence suggestive of such right is that the public had used the right of way for more than 20 years, under such circumstances as would ordinarily have given rise to a prescriptive right to travel there. But we have held that the public cannot acquire by prescription the right to use the right of way of a railroad company in a manner inconsistent with the company's right to use it for the purpose for which it was acquired. *Matthews* v. *Railway,* 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286; *Blume* v. *Railway,* 85 S. C. 440, 67 S. E. 546. Under the law as declared in these cases and the evidence in this case, the most that the plaintiff could have contended for was that he was a licensee, and entitled to ordinary care to prevent his injury.

As the facts do not bring the case within the statute, it requires no argument or citation of authority to show that defendant was prejudiced by the Judge's charge, submitting it to the jury as a case under the statute. There are material differences between a case at common law and one under the statute. In a case at common law, plaintiff must prove the failure to ring the bell or blow the whistle, that the omission was negligence, and that such negligence was the proximate cause of the injury. In a case under the statute, if the plaintiff proves the failure to give the signals required, it is negligence *per se,* which is presumed to have caused the injury. *Strother* v. *Railway, supra.* In the former, the action will be defeated, if the defendant proves that the plaintiff was guilty of ordinary contributory negligence. In the latter, defendant must prove that plaintiff's contributory negligence was gross or wilful, or that he was acting in violation of law, and that it contributed to the injury. *Lee* v. *Railroad Co.,* 84 S. C. 125, 65 S. E. 1031.

The jury were instructed several times that they should determine the nature of the place where the injury occurred, and whether plaintiff's intestate had the right to

be there.   The Court evidently meant, and the jury must have so understood it, that they should inquire whether plaintiff's intestate was there under such a legal right that defendant could not lawfully prevent him from being there.   Plaintiff's attorneys contend, however, that, even if such charge was erroneous, it was harmless, because the defendant owed plaintiff's intestate the same degree of care, whether he was there under a legal right or as a licensee.   But that contention cannot be sustained, because it assumes that, even if plaintiff's intestate was not there under a legal right, he was there as a licensee, which was stoutly denied by defendant.   On the other hand, if the jury had been instructed, as they should have been, that the public could not acquire, and that intestate had not acquired such right by prescription, the issue would have been narrowed to the question whether he was a licensee or trespasser; and, in that event, if the jury found that the notices had been posted and kept posted, and that intestate went upon the right of way in defiance of them, he was a trespasser, and entitled only to immunity from reckless or wanton injury.   In *Lamb* v. *Railroad Co.,* 86 S. C. 106, 67 S. E. 958, 138 Am. St. Rep. 1030, the Court said: "When a railroad company or other owner of dangerous property warns persons against its use, those who insist on incurring the peril of using it, however numerous they may be, have no right to charge the owner with acquiescence in the use. * * * As was well remarked by the Court in *Burns* v. *Southern Ry. Co.,* 63 S. C. 46, 40 S. E. 1018, the care required of owners of such property does not extend to the guardianship of those who insist on becoming trespassers and using the property of others unlawfully."   It is clear, therefore, that the error was prejudicial, and requires reversal of judgment.

The judgment of the Circuit Court is reversed.

MESSRS. JUSTICES FRASER and GAGE concur.

MR. JUSTICE GAGE, *concuring.* I concur with MR. JUS-
TICE HYDRICK and MR. JUSTICE FRASER.

The sole issue is whether the testimony brings the cause
within the crossing statute, for the Court below held that it
did. More exactly, the question is: Does the testimony
make out the locus of injury to be a traveled place? for
there is no real contention that the transaction happened
where the railroad crosses a street. The words "traveled
place" have been given a meaning now fixed in the cases.
They mean a place where the person has acquired the *right*
to travel; and that is not included by a place where a person
has been *permitted* to travel.

In this case there is no testimony tending to show that the
plaintiff had the *right* to walk along the track. He could
not get such a right at this particular place by adverse use
if the exercise of the right would impair the railroad com-
pany's use of the track; and the testimony makes it plain
that such would be the case. There is testimony tending
to show that the plaintiff had been impliedly invited by the
defendant to walk where he did; that is to say, the plaintiff
was licensed to walk where he did. In the first instance,
where the person walks by right, he is entitled by statute to
a particular warning. In the second instance, where the
person walks by license, he is not named in the statute as
entitled to the particular warning. But respondent relies
on the Clifford case, 87 S. C. 324, 69 S. E. 513, to show his
right to the statutory signal. In that case, Mrs. Clifford
was confessedly crossing the track; she was at a place where
she had a right to be; and she therefor had the right to the
signal, for the statute *named her.* The respondent also
contends that the failure to give the statutory signals tends
to prove wilfulness; and *per contra,* if there was wilfulness,
the fact may be proved by failure to ring and blow.

It is true the complaint alleged wilfulness, but the Court
did not charge upon that subject; the counsel did not tender
any request on that subject; the jury did not find spe-

cifically on that subject; and it was not presented to the jury at all.    If the verdict for negligence must go, so also must that for wilfulness.    *Jones* v. *Railroad,* 70 S. C. 217, 49 S. E. 568.

I am, therefore, of the opinion that the failure to ring the bell and to blow the whistle, if there was such failure, did not make a case of negligence *per se;* that the issue was: (1) Did the defendant invite plaintiff to walk on the track? (2) If so, did the defendant fail to exercise towards him ordinary care?    And what was ordinary care is a question for a jury; and it may be a jury might consider the failure to ring and to blow is evidence of such lack of care, but not necessarily so.

MR. CHIEF JUSTICE GARY, *dissenting.*    The appellant's attorneys, in their argument, state that the two principal questions presented by the exceptions are: First, whether a statutory cause of action is set out in the complaint; and, second, whether the jury should have been instructed that there was no testimony tending to show that the injury was sustained at a "traveled place," within the contemplation of the statutes.    I concur in the opinion of MR. JUSTICE HYDRICK as to the first question, but dissent as to the second.

The following testimony appears in the record:

Robert B. Sanders, the original plaintiff, testified as follows: "Q. Do you know whether or not that portion of the city, between Columbus and Line streets, and Addison's court and Line street, is a populous place?    Do or not many people live there?    A. A good many.    Q. Thickly settled? A. Yes, sir.    Q. Do you know whether or not that place has been used for more than 20 years by people passing to and fro?    A. Yes, sir.    Q. That is to say, from Columbus to Line street from Addison's court to Line, and from Addison's court to Columbus?    A. Yes, sir.    Q. Who passed through there?    A. I saw men, women, and children going

through there.  Q. At all times?  A. Well, the children went there principally from school, the men and women passed through any time they wanted to.  Q. Now, will you state whether or not there are yards and doorways that open on this track?  A. Yes, sir.  Q. Do you know where Mr. Doscher's house is?  A. Yes, sir.  Q. Is not that house on the southeast corner of Line and the railroad track?  A. Yes, sir.  Q. Will you state whether or not there is a regular doorway, leading from the piazza of that house to the railroad track?  A. Yes, sir.  Q. Do you know where Shumacher's lots are?  A. Yes, sir.  Q. Are they or not on the west side of the track?  A. Yes, sir. Q. Is not there a doorway leading from these rooms on the track?  A. Yes, sir.  Q. State whether or not Addison's court at this time was open to the public?  A. Yes, sir. Q. Was there or not a constant passage of people from Addison's court to Line street, and from Line street back? A. Yes, sir.  Q. Is or not Addison's court a regular public court of the city of Charleston?  A. I take it to be such. Q. Just as any other court?  A. I take it to be the same as all other courts.  Q. Now, Mr. Sanders, you know where the Columbus street crossing is?  A. Yes, sir.  Q. That is a reguar public crossing?  A. Yes, sir.  Q. Now, Mr. Sanders, don't you recollect there used to be a fence across Addison's court?  A. Yes, sir."

Isaac Briggs, a witness for the plaintiff, thus testified: "Q. Will you not state to these gentlemen whether or not pleople, men, women, and children, pass constantly from Columbus to Line street and from Addison's court up there?  A. All my life, since I was a little boy.  Q. Did you not, Mr. Briggs, ever know the railroad to stop any one going through there?  A. Never did.  Q. Did you not see any signs telling you you could not go there?  A. Never did.  Q. Did or not any railroad people ever warn you to stay off that property?  A. No, sir.  Q. And you say you saw people walking through there?  A. Women and

children; men, women, and children. Q. Did they or not pass there just as they would pass through Meeting street, or any place that people pass through? A. I passed through there all the time. I lived on Cooper street 35 years, and I would go from Meeting to Line, and through the railroad to Columbus street, and return the same way, and have never been molested by anybody. I have since this trouble one time; I saw a sign there since this trouble. Q. Will you state whether or not Addison's court is a public court? A. Public thoroughfare for everybody. Q. And you never saw anybody stopped? A. No, sir. Q. And you have known it since you were eight years old? A. Yes, sir. Q. Don't you recollect that fence that used to be across Addison's court? A. I recollect a piece of fence, but it always had an opening to go through. Q. And then it was gradually broken down and you could go through it? A. Yes, sir. Q. It was built there new; how could you go through? A. Through an opening or gate. Q. But there was a fence over a part of it? A. Yes, sir."

C. M. Church, another witness for the plaintiff, testified as follows: "Q. Now, Mr. Church, will you state to the Court and jury whether or not you know the locality between Columbus and Line streets and between Addison's court and Line street? A. Yes, sir; I know it thoroughly from childhood; it was my playground when I was ten years old, in my school days going through from Meeting to the Bennett school, and I would play there in the evening, hunt the ball on the railroad track, and never was stopped. Q. Do you know whether or not men, women, and children generally pass and repass that property? A. Lots of them. Q. Have you or not ever seen any of them turned back, stopped? A. None that I know of. Q. Did you ever see any signs there warning people to keep off? A. I don't remember seeing signs there until lately. Q. Was or not it possible to pass from Addison's court right on to Line street. A. Oh, yes, sir. Q. And did or not people pass from Line

street to Addison's court, and from Addison's court to Line street? A. Yes, sir. Q. Is or not that a thickly settled and populous part of the city of Charleston? A. A good many people live there. Q. The old South Carolina and Georgia depot used to be just north of that place? A. Yes, sir. Q. Is there or not a well-beaten track going through there, on the east and west side of that place, from Line to Columbus and from Addison's court to Line street and back? A. Yes, sir. Q. A well-beaten path? A. Yes, sir. Q. And in all the time you have known it—how many years have you known it, 35 years? A. About 45 years. Q. And in that time you have always known people to pass to and fro, without any stoppage by the railroad company? A. Yes, sir."

Patrick ·O'Grady thus testified in behalf of the plaintiff: "Q. Do you know where Addison's court is? A. I do. Q. Is or not Addison's court between Line street and Columbus street? A. It is; yes, sir. Q. Do you know whether or not people residing in Addison's court pass through there to Line street and back to Addison's court? A. I have seen them; I saw a wagon unload at Mr. Doscher's house, unload wood and go through the railroad into Addison's court, and out through Meeting street. Q. You have seen a wagon unload at Mr. Doscher's and go through Addison's court? A. Yes, sir. Q. Does or not the door of Mr. Doscher's piazza open out on the railroad track? A. It does. Q. And you never have seen anybody stopped from going through there? A. No, sir. Q. How long have you known that place? A. About 35 years. Q. And people have always used it going to and fro; there is a well-beaten path there? A. Yes, sir."

This testimony undoubtedly tended to show that the plaintiff was injured at a place where the public was accustomed to travel, and that the user by the public was open, continuous, and adverse, or upon the invitation of the defendant.

In *Strother* v. *Railway,* 47 S. C. 375, 25 S. E. 272, the issue as to whether there was any testimony tending to show that the injury was sustained at a "traveled place" was properly submitted to the jury upon testimony not near so strong as in this case.

The appellant contends, however, that this was not a traveled place, within the contemplation of sections 2132 and 2139, Code of Laws 1902 (now sections 3222 and 3230, Code of Laws 1912), on the ground that the public did not have the *right* to use said land for the purpose of travel.

In the case of *Hankinson* v. *Railway,* 41 S. C. 1, 19 S. E. 206, the Court used the following language: "The rule, as we understand it, is that, to constitute 'a traveled place,' it must not only be a place where persons are accustomed to travel, but it must also be a place where persons have in some way acquired the *right* to travel. * * * The fact that all persons who desired to do so had been accustomed to use the footpath at the crossing in question, with the knowledge and acquiescence of the railroad company, was not of itself sufficient to establish the legal right to cross; but there must be something more, something to show an adverse use of the crossing, or something to show that the railroad company recognized the *right* of the public to cross at the point in question. The same principles which govern, where the question is as to an alleged right of way over the lands of a landowner, acquired by prescription, must govern here. There the doctrine is that the mere fact that persons have, for any number of years, been accustomed to use the way in question is not sufficient, but there must be something to show that such use was of an *adverse* character, or that the owner of the soil had in some way recognized the *legal right* of persons to use the way." The Court then proceeds to quote the following language from the case of *Sims* v. *Davis,* Cheves 1, 34 Am. Dec. 581: "The use of every such way is permissive, or held at sufferance, where the claimant has done no act showing that

he claimed the right adversely, and the allowance of the use by the owner of the soil has been unaccompanied by any act, which shows a recognition on his part of the right of the claimant to use the road without his permission."

The case of *Hankinson* v. *Railway,* 41 S. C. 1, 39 S. E. 206, decides that the public cannot merely by using a foot-path over a railroad company's right of way, with the knowledge and acquiescence of the railroad company, for more than 20 years, acquire a legal right to travel the path-way; but that it can acquire a legal right to use such path-way, if the user has been adverse, or the railroad company has, during that time, recognized the legal right of the public to use the pathway. The case just mentioned does not characterize the relation· which the public, after acquir-ing such legal right, would sustain to the railroad company, but the case of *Matthews* v. *Railway,* 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286, shows it would be that of a licensee.

In the last-mentioned case the Court says: "The public may no doubt acquire a *right* to use a particular way over lands set apart for a railroad right of way by use clearly shown to be adverse for 20 years, in the sense that, after the lapse of that time, the railroad authorities cannot arbitrarily forbid the use of such way for any reason not connected with the operation of the railroad; but since the company cannot grant its right of way so as to defeat the purpose for which it was acquired, and it cannot be condemned for another highway so as to hinder these uses, it cannot be presumed that there ever was any grant or dedication to a public use inconsistent with the purpose for which the prop-erty was acquired by State authority. * * * Those who walked in the path here described entered, not a public highway, but the property of the railroad company as licensees. * * * It is, of course, always a question for the jury to determine whether the way was so plain and so con-stantly used, with the acquiescence and consent of the owner, as to imply an invitation." The Court then pro-

30—97

ceeds to quote with approval the ruling in the case of *Chenery* v. *Railroad Co.,* 160 Mass. 211, 35 N. E. 554, 22 L. R. A. 575, which was as follows: "While long use by the public of a well-defined path across a railroad track does not, as a matter of law, impart a license, still it presents a question of fact for the jury, as to whether a license is to be implied, *which would subject the railroad to liability for negligence."* (Italics added.)

The case just mentioned rules that the public may acquire the *right* to travel a pathway over a railroad company's right of way, when the user has been open, continuous, and adverse for 20 years, and that the railroad company cannot arbitrarily forbid the exercise of such right, unless the use of the pathway would materially interfere with the operation of the railroad and defeat the purpose for which the company was incorporated.

The testimony hereinbefore set out tends to prove that there was a compliance, on the part of the public, with every requirement of law necessary to confer upon the plaintiff the right to use the land for the purpose of travel. We contend that his use of the land was not dependent upon the presumption of a grant or a prescriptive right, but upon the fact that the privilege of a licensee is based upon a *legal right,* which, during the continuance of the license, entitles him to protection as effectual as if it was founded upon a grant or prescription.

"While a license operates only as an excuse for the act or acts licensed, and passes no interest in the land, it is effectual to justify everything done in accordance with its terms, prior to the revocation, and likewise any acts without which the acts licensed could not be done." 25 Cyc. 643.

There is no case in this State in which it has been decided that a licensee is not entitled to invoke the provisions of the sections hereinbefore mentioned. If a license does not confer a legal right upon the licensee to exercise the privilege therein mentioned, in accordance with its terms, then

we fail to discover wherein his position is more advantageous than that of a trespasser. But the case of *Matthews* v. *Railway,* 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286, and *Islar* v. *Railway,* 57 S. C. 332, 35 S. E. 583, both show that a licensee is entitled to ordinary care on the part of the railroad, and that, if the railroad is guilty of negligence towards a licensee, it thereby becomes liable to him for damages, whereas it owes no such duty to a trespasser. As a railroad owes to a licensee the duty of exercising due or ordinary care for his protection, no good reason can be assigned why he is not entitled to the protection afforded by the statutory provisions hereinbefore mentioned, especially as a railroad owes no higher duty to any person except a passenger entering upon a traveled place than it does to a licensee. (Its duty to a passenger is not involved in this case.)

Finally it is contended that there is a material difference between the right of the public to *cross* and the right to travel *along* a railroad track. Conceding that there is such difference, it naturally follows that, if the public may acquire the right to *cross,* there is a stronger reason why it should be allowed to travel along a railroad track, as there would be less danger, and the probability of interfering with the operation of the railroad would not be so great. But it would be unreasonable to suppose that the legislature contemplated so subtle a distinction. Furthermore, the testimony tended to show that the public used the defendant's right of way for walking *across* as well as *along* the railroad tracks.

There is another reason why the judgment of the Circuit Court should be affirmed. The testimony tended to show that the public used the so-called "railroad yard" or "railroad avenue" with the acquiescence or upon the invitation of the city of Charleston, in connection with, and incidental to, Addison's court, which was a public playground, and that the defendant railroad company recognized the fact

that it did not have the *exclusive* right of way over the land in question.    The fact that there was a gate in the fence that, divided Addison's court from the lot over which the railroad was operated tended to show an invitation to the public, not only on the part of the defendant, but of the municipality, to pass through the gate.

The right of the defendant to operate its railroad within the limits of the city was dependent upon the consent of the municipality, which had the power to attach such conditions as it might see fit, or even to refuse to allow the defendant to continue the operation of its road, whenever such action was demanded by the exigencies of the occasion, or to grant a right of way not exclusive in its nature, but to be exercised in connection with the right of the public to use the land as a street or traveled place.    There was testimony also to the effect that the public exercised such right, for more than 20 years, openly, notoriously, and adversely to the rights of the defendant, as we have stated, by acquiescence or invitation of the municipality, in going to and coming from the said place of public amusement.

In the case of *Matthews* v. *Railway,* 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286, the Court says: "It should be observed the conclusion that the public cannot acquire a way on a railroad right of way, by prescription which is founded on the presumption of a deed, does not imply that title to portions of the right of way may not be acquired by adverse possession, which is founded on possession hostile to the true owner.    Neither adverse possession nor the doctrine of equitable estoppel referred to in *Crocker* v. *Collins,* 37 S. C. 327 (15 S. E. 951, 34 Am. St. Rep. 752), is involved in this case."    See, also, *Southern Ry.* v. *Beaudrot,* 63 S. C. 266, 41 S. E. 299.

The adverse user of the said land by the public, for more than 20 years, raised "the presumption of an antecedent exercise of the right of eminent domain by the public authorities."    37 Cyc. 37.

There is no question that the use of the said land was sufficient to make it a "traveled place," within the contemplation of the statute, unless, as contended, the user was without legal right on the part of the public. We have, however, shown that the adverse use of the land by the public for more than 20 years would raise the presumption that the municipal authorities, in the exercise of the power of eminent domain, had set apart the land for the use of the public, thus giving the public the legal right to use the land, in connection with its enjoyment by the railroad company.

For these reasons I dissent.

MR. JUSTICE WATTS concurs in the dissenting opinion.