RINGSTAFF v. LANCASTER AND CHESTER RY. CO.

1. EVIDENCE—DIAGRAM.—Only so much of a diagram can be used in evidence as is made up from actual measurements. *Dicta.*

2. RAILROADS—TRAVELED PLACE—NEGLIGENCE—NONSUIT.—Proof that persons were accustomed for twenty years to pass along and over a railroad bridge, there being evidence tending to show that there

was for years at each end of the bridge a notice to "keep off," and that the president of the railroad company refused to permit plank to be laid along on the bridge to accommodate foot passengers, is not sufficient to make that a "traveled place," in the sense of the statute, where failure to give signals required by the statute is negligence *per se,* and nonsuit properly granted, there being no evidence that the accident occurred at the place where the railroad and public way crossed each other.

MR. JUSTICE GARY *dissents.*

Before TOWNSEND, J., Lancaster, March term, 1901. Affirmed.

Action by Mrs. Lottie C. Ringstaff, administratrix, against Lancaster and Chester Railway Company. From order of nonsuit, plaintiff appeals.

*Mr. Joseph Clark,* for appellant, cites: *Nonsuit should not be granted if there be any evidence to support plaintiff's claim:* 7 S. C., 142; 44 S. C., 315; 50 S. C., 25, 548; 1 Strob., 4; 46 S. C., 104. *Negligence is for jury:* 59 S. C. 429; 52 S. C., 323; 58 S. C., 70. *Evidence showed knowledge and acquiescence on part of defendant of use by public:* 61 S. C., 558; 22 S. C., 4; 57 S. C., 205. *Deceased licensee and not trespasser:* 61 S. C., 561; 4 S. E. R., 248; 14 S. E. R., 328; 5 S. E. R., 577. *As to the diagram as evidence:* 34 S. C., 444. *As to what is a "traveled place:"* 59 S. C., 420; 41 S. C., 20; 34 S. C., 209, 450.

*Mr. Ernest Moore,* contra, cites: *There being no evidence to show that the place of the accident was a "traveled place" or to show negligence in defendant, nonsuit was properly granted:* 34 S C., 292, 444; 41 S. C., 20; 59 S. C., 433; 61 S. C., 556; 57 S. C., 243; 59 S. C., 254; 23 S. C., 531; *Haltiwanger* v. *R. R.,* 63 S. C.

November 25, 1902. The first opinion was delivered by

MR. JUSTICE GARY, *dissenting.* The appeal herein is from an order of nonsuit in an action for damages, claimed

to have been sustained, by reason of the alleged killing of the plaintiff's intestate. Though the exceptions are numerous, they raise practically but three questions: 1st. Was it error on the part of his Honor, the presiding Judge, in not allowing the plaintiff to introduce in evidence a plat or diagram of the surrounding locality where the plaintiff's intestate was killed? 2d. Was there any testimony whatever tending to sustain the allegation that the trestle upon which the intestate was killed was a "traveled place," in contemplation of the statute? 3d. Was there any testimony tending to show negligence on the part of the defendant?

The complaint, omitting the formal portions thereof, is as follows: "2d. That on or about the 9th day of September, 1899, while H. F. Ringstaff, deceased, was on his way along a traveled place leading from the Lancaster Cotton Mills, in Lancaster County, to his home, and having arrived at a place where the traveled place crosses the track of the defendant company, at a place known as Bear Creek Crossing, a short distance west of the Lancaster Cotton Mills, in the county and State aforesaid, and was in the act of crossing the track of the defendant company at said point, the said defendant, by its agents, servants and employees, caused one of its locomotives with a train of cars attached thereto to approach the said crossing, and then and there to pass rapidly over the track of said railway company, and negligently and carelessly failed and omitted while so doing to give the signals by sounding the steam whistle or ringing the bell, as required by the statutes of this State, by reason whereof the said H. F. Ringstaff was not aware of their approach, and was then and there run over and killed by said train of cars. 3d. That by reason of said negligence of the defendant company, by its agents, servants and employees in charge, and their careless conduct in the managament of said locomotive and train of cars, the same struck the said H. F. Ringstaff, passing over and upon him, then and there causing his death, to the damage of the said heirs at law $15,000; that the said railway company knew, as it was its duty to know, that H.

F. Ringstaff, the deceased, habitually passed and would have to pass along said traveled place and cross its track at said crossing in going to and from the Lancaster Cotton Mills, where he was employed and worked. 4th. That the said traveled place and crossing have been used by the public for more than twenty years as such, and the deceased had a right to travel upon the same." These allegations were denied.

We will first consider whether the presiding Judge erred in not allowing the plaintiff to introduce in evidence the plat or diagram. When the plaintiff's attorney offered the plat or diagram for the purpose of introducing it in evidence, the defendant's attorney objected. The record contains the following as the conclusion of a lengthy colloquy:

"The Court: You might look at the paper and refresh your memory, but the paper, unless it shows the measurements, can't go to the jury. You might have it before you and give your opinion as to the distance and so forth, and show the jury where you did measure, but you can't put the paper in. If you put the paper in, then you put in a lot of matter that has not been measured. Plaintiff's counsel: I will only refer to those matters that I have actually measured. The Court: Well, sometimes a witness in doing that will say, 'well, here is where so-and-so lives.' Unless that has been measured and located, he can't say that—unless he knows it, has measured it and located it. Plaintiff's counsel: I understand your Honor's ruling, and I don't wish to use anything but what has been measured." The plaintiff's attorney was permitted to use the diagram for the desired purpose; therefore, the exceptions raising this question are overruled.

We will next consider whether there was any testimony whatever tending to show that the trestle upon which the intestate was killed was a "traveled place," in contemplation of the statute. Joseph Clark, a witness for the plaintiff, testified: "That in 1876, the trestle, the wood work, was put there, and that before that, there being a public road and ford, people continued to go through that

way; and inasmuch as there was no other way of crossing the creek, they used that trestle, and the public has been using it ever since. My wife owns a piece of land where Mr. Ringstaff lived, on both sides of the narrow gauge railroad. It was purchased in 1873, and I have had occasion to cross that trestle ever since, going to that place, and have been using it for the whole time, and know myself that a great many of the country people out in that part of the country coming to town and going through that plantation road leading down to the trestle, have been crossing there ever since, and I have never heard any objection or protest against their crossing there except when the railroad company changed hands first—well, it is the Southern Railway now. Mr. Moore: You mean the Charlotte, Columbia and Augusta road? A. Yes, sir, about the time they took charge there was some pieces of plank with these words on it stuck up at each end, 'Keep off.' That was all the warning that I have ever seen to persons in any shape or form not to use the trestle, if it could be construed that way. But there is never any one paid attention to that at all, and I know that the public, all those people out towards Col. Springs' plantation, colored people and white people, all have been using it up to the present time. I have seen as many as from one to thirteen people on that trestle at one time crossing, and frequently half a dozen boys and girls. And I know the fact that it has been traveled ever since and it is being traveled more than ever, because I think there is about 2,000 inhabitants on factory hill. There are two stores on the other side of the creek; they have to go across there when they want to visit those stores. They do cross there; I have seen them crossing there, and I know the fact that they have been using that trestle for over twenty years. Now those roads over there —I speak of the road that comes in from where Mr. Stephen Williams used to live—I have known that road at least fifty years ago, and a great many people came that way; but there is no ford now for a horse to cross, and it is merely pedestrians; the people who walk to town, come to the factory to

bring their produce and things of that sort, they all cross there. * * * Now as to those roads coming from Ringstaff's place, they come down some distance and then come into the railroad on the south side, and at the time he was killed there was a beaten path along at the end of the crossties on the south side, but since the railroad company have concluded to make it a broad gauge, they have hauled in a good deal of earth and thrown it off, and that track isn't so plain. And a great many people walk the railroad for miles coming from towards the river, and come to that trestle and cross and go to factory hill and coming on to town, and in doing so they have to cross that trestle, and in crossing that trestle they have to cross the narrow gauge railroad, and that is the only way they can cross at that point. They can cross at other points beyond there and this side of there by these little country roads and paths. When they come in from that way, there is no possible way for them to cross at that point without crossing the creek on the trestle. Of course, they could come the Lansford road and come on to opposite the factory—there is nothing to hinder them. But those who come down the narrow gauge from Mr. Ben. Dunlap's place and the Chaffee place—I don't say all of them, but a large portion of them, and I would say that at least nineteen-twentieths of the persons who have to cross there from the factory cross there on that crossing." In order for the plaintiff to establish the allegation that the spot where the deceased was killed was a traveled place, it was necessary to show not only that the public was accustomed to use it for travel but that it had acquired the right to use it for such purpose. Furthermore, before the plaintiff was entitled to a recovery for statutory negligence, it was necessary to show that the collision occurred at a *crossing* and not simply on a pathway over the track of the railroad. These requirements are fully sustained by: *Hutto* v. *R. R.,* 61 S. C., 495, 39 S. E. R., 710; *Jones* v. *R. R.,* 61 S. C., 556, 39 S. E. R., 758; *Risinger* v. *R. R.,* 59 S. C., 427, 38 S. E. R., 91; *Hankinson* v. *R. R.,* 41 S. C., 20, 19 S. E. R., 206; *Hale* v. *R. R.,* 34 S.

C., 293, 13 S. E. R., 523; *Barber* v. *R. R.*, 34 S. C., 450, 13 S. E. R., 630; *Kirby* v. *R. R.*, 63 S. C., 494. The testimony which we have set out, as well as other testimony which we deem it unnecessary to reproduce, tended to show compliance with all the foregoing requirements and to establish the allegation that the collision occurred at a traveled place, as contemplated by the statute.

We proceed next to consider whether the testimony disclosed any facts from which negligence on the part of the defendant could be inferred. While the witnesses testified that the whistle was sounded when the train of cars approached the crossing, they were, nevertheless, unable to state that the bell was kept ringing or the whistle sounding until the engine crossed the traveled place, although they had the opportunity of hearing. This tended to show that there was a failure to comply with the requirements of the statute. Numerous decisions in this State show that such failure is negligence, *per se*.

For the foregoing reasons, we dissent from the opinion of the majority of the Court.

MR. JUSTICE JONES. I cannot concur in a judgment of reversal in this case, inasmuch as a careful reading of the testimony satisfies me that the nonsuit was properly granted. There was no evidence whatever of any negligence on the part of the defendant, except upon the theory that there was some evidence that the railroad trestle upon which the fatal collision occurred was a "traveled place," in the sense of the statute, and that the trestle constituted a part of the crossing. The decisions, which need not be cited, show that the collision must be on the crossing where the railroad track crosses the public way. It seems to me that the statute contemplates a direct crossing, not such as is attempted to be set up in this case. There was no evidence of any way, which the public had acquired the right to use, leading on to, along and from the trestle, so as to constitute the trestle a part of such way; and even if it were admitted

to be possible for the public to acquire the legal right to use the railroad trestle already dedicated to other public uses, there was no evidence that the collision occurred at a place where the railroad and public way crossed each other. It may also be noticed that the evidence showed that on each end of the trestle there was placed a board warning all persons to "keep off," and that such notice had been there ever since the lease of the line to the Charlotte, Columbia and Augusta Railroad Company, and before the defendant company became the owners. It was further shown that the president of the defendant company refused to allow planks to be placed along the trestle as a walkway. If the evidence in this case tended to show that the trestle was a "traveled place," then there is scarcely any portion of the line of a railroad which has been in existence for twenty years which may not be shown to be a "traveled place," for many individuals will persist against all protests in walking along the railroad track when it suits their convenience to do so.

MR. JUSTICE POPE concurring in this view, the judgment of the Court is, that the judgment of the Circuit Court be affirmed.