The opinion of the Court was delivered by
Mr. Justice Woods.
Charles A. Thompson, early in the night of S3d October, 1905, was driving a wagon and pair of mules -along the Two-Notch road, in Richland county. The road turns at a sharp angle to cross the track of the defendant, Seaboard Air Line Railway, and at the crossing there is a shallow ditch and a bridge on each side of the track. One of the front wheels of the wagon missed the *335 bridge and went into the ditch, and the mules were thus held on the railroad track. The defendant’s fast train, known as the Florida Limited, was approaching. Thompson left his team and ran, probably about a hundred feet, towards the train, waving his hat in the effort to stop it. The train did not stop in time, and struck and killed both Thompson and the mules. J. H. Thompson, the owner of the mules, recovered against the defendant damages for their loss, and the judgment of the Court of Common Pleas was affirmed by this Court in Thompson v. Seaboard Air Line Ry., 78 S. C., 384. As administrator of Charles A. Thompson’s estate, J. M. Thompson brought this action, alleging the death of his brother to have been due to the negligent, reckless, wanton and wilful conduct of the defendant, and recovered a judgment for $3,000. Defendant appeals, charging error in the refusal to grant a nonsuit, in instructions to the jury, and in refusing to- grant a new trial.
1 The first question raised was whether there was any evidence of negligence by the defendant constituting a proximate cause of the death of Thompson. Some of the plaintiff’s witnesses testified that by actual measurement, in approaching the crossing, the train was on a straight track for fivehundred and eighty-three yards. The engine was equipped with an electric headlight, and there was some evidence from W. H. Tiller, an engineer sworn in behalf of plaintiff, that, under favorable conditions, such a headlight would enable the engineer to see an objeot on the track two hundred and fifty to three hundred yards; but this was a misty night, and the witness said on such a night “the sweat from the glass would stop your reflection and light to a certain extent.” Although testifying that such a train as this could be stopped in about one hundred to one hundred and twenty-five yards, he said that the distance would be greater on a wet track or down grade. According to plaintiff’s evidence, the fatality occurred on a down grade, and the misty night, no doubt, made a damp *336 or wet track. The train was stopped just beyond the crossing. M. A. Drawdy testified he was standing on the side of the track and saw: the headlight of the approaching train and a mam running along the track towards it, waving his hat as if to sign- it down; that the train passed! him and he did not see it strike deceased; that the speed was not slackened until about the time it struck the mules. The impression of this witness as to the precise time the speed of the cars was slackened was necessarily vague, and hence his evidence is indefinite. Of course, the testimony of the engineer of the -train that he was on the watch, saw the deceased signalling, and immediately used every effort to stop the train, is to be left out of view in deciding whether the above facts prove negligence in failing to use proper efforts to stop the train. But negligence is to be .proved, not assumed, and we do not think, if all the plaintiff’s- evidence on the point be taken as true, it would tend to establish in the mind of a reasonable juror the conclusion that the engineer was negligent in failing to see the deceased before he did, or in failing to stop the train in time. If this had been the only proof of negligence, the defendant would have been entitled to a nonsuit, but -other charges of negligence are to be considered.
2 *337 3 *336 The bridge on which the wagon- and mules were caught was built by the railroad company on its roadbed, for its own purposes-; hence there can be no doubt of the duty of the railroad -company to keep it in order for the safety of the travelling public. There was evidence that the bridge, though at a sharp turn in the road, was only -ten to twelve feet in- width, whereas safety to vehicles required it should be twenty feet, the same width as the highway. The wheel tracks of the wagon indicated that if the bridge had been of the requisite width the wheels would not have left the bridge, the wagon would not have been- caught, and the deceased, of course, would have passed on in safety. From these facts it is very clear there was *337 evidence of defendant’s negligence resulting in the mules and wagon being caught. But it is insisted the Court should have held, 'as a matter of law, this negligence could not be the proximate cause of the death of Thompson. The mules and wagon were in a place of utmost peril.' Not only so, but their position on the track was such as to imperil the safety of defendant’s approaching train and the passengers thereon. All this was due to defendant’s negligence in the construction of the bridge. Thompson lost his life in the eff ort to stop the train and avert the threatened loss of other lives and destruction of the property in his charge. That effort was immediate and direct, and was the only one he could have made. He was alone, the train was approaching, and his pressing obligation was to try to communicate to the engineer the danger. This right and duty to signal the train, according to the evidence, was forced on him by defendant’s negligence. Therefore, if the jury believed this evidence, it was certainly sufficient to sustain the conclusion that defendant’s negligence was a proximate cause of the peril assumed by Thompson and of his death. This conclusion is fully sustained by the very analogous cases of Cooper v. Richland Co., 76 S. C., 202, 56 S. E., 958, 10' R. R. A. (N. S.), 799, and Snipes v. A. C. L. Ry., 76 S. C., 207, 56 S. E., 959. The defendant submits, however, that even if the defendant’s negligence was a proximate cause of Thompson’s death, yet he knew of the approach of the train and was guilty of contributory negligence in not getting off the track 'before the train reached him. Binder the circumstances, the Court could not have said that it was negligence per se for Thompson' to go on the track for the purpose of stopping the train. It is equally clear, it would be very harsh judgment to say the fact that he stayed on the track too long conclusively shows he was negligent in not getting off in time to- escape injury. If the evidence is credible, the emergency was brought upon him by the defendant. He was absorbed in the effort to *338 stop the train, and, no doubt, excited to the degree of consternation by the emergency. He was facing a powerful electric headlight which, it is reasonable to- suppose, blinded him to the extent that he erred1 in his estimate of the distance of the train from1 him until it was too late to' escape. The rule was established in this State in 1840, by the case of Ivy v. Wilson, Cheves, 74, that it is not contributory negligence per se for one who owes the duty to protect property to' take a manifest risk to save it, unless the risk was wanton and unreasonable; and that the exposure by a person 'so situated is not to be presumed to¡ be wanton or unreasonable exposure to unnecessary danger. The test is, whether a reasonably prudent man, in the same exigency, would have assumed the peril. Wilson v. Ivy, supra; Wasmer v. Delaware, etc., R. R. Co., 80 N. Y., 313; 36 Am. Rep., 608; 39 Cyc., 534. The exceptions on this point are overruled.
4 There was direct evidence of the violation of the signal statute; that is, of a failure to' sound the whistle five hundred yards before reaching the crossing; but the defendant contends that Thompson was not within the protection of the statute, because he was about one hundred feet from the crossing when struck by the train, and, therefore, the Circuit Judge should not have submitted to the jury the issue of negligence under the signal statute. Referring to the signal statute, Chief Justice Simpson, for the Court, says, in Neely v. C. C. & A. R. R. Co., 33 S. C., 136, 139, 11 S. E., 636: “Now, there can be no doubt but that the object of these sections was to prevent collisions which might occur between persons attempting to cross the track of the railroad and the locomotive and cars approaching the crossing at the same moment, and the provisions of the act did not include, nor was the act intended to include, injuries inflicted upon bystanders not intending to cross, or upon cattle that happened to be killed or injured pasturing nearby, but not upon the crossing or using it to pass from the one side to the other.” This rule has been followed in *339 this State and is in accord with almost all precedents in other States. Hale v. R. R. Co., 34 S. C., 292, 13 S. E., 537; Fletcher v. R. R. Co., 57 S. C., 205, 35 S. E., 513; Sims v. Ry. Co., 59 S. C., 248, 37 S. E., 836; Hutto v. R. R. Co., 61 S. C., 495, 39 S. E., 710; Ringstaff v. Ry. Co., 64 S. C., 546, 43 S. E., 22; Fowles v. Ry. Co., 73 S. C., 306, 53 S. E., 534. But we can find no case where the application of the statute to a case like this has been considered. Blere the circumstances would warrant the inferences that Thompson’s team had been' caught on the track a very few moments before the approach of the train, and that if he had heard signals he wo-uldl not have attempted to cross before it passed. It was, therefore, for the jury to isay whether a failure to give the signals was negligence, contributing to bring the deceased into the predicament in which he found himself. The whole trouble arose at the crossing^ to a traveller exercising his right to cross. If he would not have gotten into the predicament but for defendant’s failure toi give the signal, then all reasonable efforts to extricate himself from it may well be said to have been made necessary by defendant's negligent failure to signal. If such efforts had been made by deceased while standing on the crossing, there can be no doubt that the case would have fallen under the signal statute. It would be a very technical distinction to hold that when his team was thus caught on the crossing, and Thompson extended his efforts; to prevent a catastrophe a hundred feet from it, he lost all benefit of the statutory protection provided for persons passing over a crossing on the highway.
Without extended analysis of the cases on the subject, it is sufficient to say none of them in this State, or elsewhere, are like this case, and there is no principle laid down in them which requires such a technical distinction as is here contended for by the appellant. The request to charge on this subject was as follows: “Failure to ring the bell or blow the whistle of a locomotive approaching a crossing is not negligence as to a person on the track a little distance from *340 the crossing.” After reading it to the jury, the Circuit Judge said: “Generally speaking that may be, but the circumstances may be such (and you are to be judges- of the circumstances in -each particular case) where it might be negligence; I charge you that, as a general proposition, bu-t I say there may be circumstances in each case where the jury have the right to conclude it would be negligence under certain circumstances.” For the reasons stated, we think this instruction was not error as applied to this- case.
5 The issue as to punitive damages was properly submitted to the jury. There was evidence tending to show the crossing was obviously, dangerous on account of the narrowness of the bridge, and that the county authorities had several times warned the agents of the railroad company of the danger, and requested that the bridge be made safe; and that the defendant, nevertheless, failed to take any steps to perform the duty required of it by law.
6 The consent of the railroad company that one in the situation- of Thompson should enter -on its trade to stop its train by signal, and thus avert the danger of loss of valuable property or of human life, will be presumed. The Circuit Court, therefore, did not err in refusing to charge the law applicable to trespassers on the railroad property.
The judgment of this Court is that the judgment of the Circuit Court be affirmed.