PENNA. R. CO. v. BOR. OF FREEPORT ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
              OF ARMSTRONG COUNTY.

138        91
30 SC   335

138        91
f225      60
d39SC 630

Argued October 13, 1890—Decided November 3, 1890.

A preliminary injunction was awarded by the court below, on a bill filed by
   a railroad company against a borough and its officers, to restrain defend-
   ants from interfering with the laying of a second track upon land ac-
   quired by the plaintiff company's lessor from the commonwealth, but
   which had been permissively used as a passage-way by the public for
   more than twenty-one years : affirmed.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 38 October Term 1890, Sup. Ct. ; court below, No. 70
March Term 1890, C. P. in Equity.

In December, 1889, the Pennsylvania Railroad Company,
lessee of the Western Pennsylvania Railroad Company, pre-
sented a bill in equity against the borough of Freeport, its bur-
gess and policemen, averring in substance :

That the West. Penna. Railroad was located and constructed
upon ground formerly occupied by the Western Division of the
Pennsylvania Canal, where it extended through the borough
of Freeport, and that the business of the road had so increased
that the laying of an additional track was necessary ; that the
said second track through said borough was located upon land
owned by the said West. Penna. Railroad Co.; and that while
the plaintiff's agents and employees were engaged in excavat-
ing for said second track in said borough, east of Second and
west of Third street, they were illegally arrested by the de-
fendant borough by its defendant officers ; praying for an in-
junction, etc.   The defendants presented an answer, and on
the same day, a hearing of a motion for a preliminary injunction
was had upon affidavits filed by both parties.

On January 4, 1890, the bill, answer and affidavits were filed,
with the following opinion, NEALE, P. J.:

The plaintiffs in this bill are the lessees and operators of that

Opinion of Court below.

certain line of railroad known as the Western Pennsylvania Railroad, and which is a part of the general system of the Pennsylvania Railroad Company.

· The charter of the Western Pennsylvania Railroad was granted by the act of March 22, 1860 [P. L. 322], enlarged or modified by other supplements to the said act. The fact of charter organization, etc., of the company is not questioned. It is conceded, also, that the Pennsylvania Railroad Company was duly chartered, organized and actively operated its roads, including the West. Penna. Railroad.

As early as 1824, what was known as the Pennsylvania Canal came into existence by the acts of assembly of this commonwealth, afterwards supplemented from time to time as the continuing exigencies of constructing, operating and maintaining the canal, or, as it was called, "the Public Works," arose. In the construction of these works and the appropriation of the necessary ground therefor, the state, under its paramount right of eminent domain, entered upon the land of the citizens who were, as to the state, qualified or conditional owners, and, upon making suitable compensation therefor, took possession of so much thereof as was necessary for the purposes of the public improvement. The entire ownership of the land so taken, thereafter became vested in the state in its character as paramount proprietor. The canal was a continuous water course or channel extending from the Delaware river to the mouth of the Ohio at Pittsburgh. It was operated by the state, and served for many years as a public thoroughfare.

Afterwards, by act of assembly and by deed of general conveyance in pursuance of said act of assembly, the title to the said canal or Public Works became vested in the Pennsylvania Railroad Company. The title then acquired by the railroad company was full and complete: see Haldeman v. Railroad Co., 50 Pa. 425; Robinson v. Railroad Co., 72 Pa. 316.

In the construction of the railroad from the western side of the Allegheny river, opposite the mouth of the Kiskiminetas river, to the city of Allegheny, the roadbed of the railroad and tracks were located and laid upon the site of the canal.

The borough of Freeport was laid out many years ago, before the beginning of the present century. The original plot of the town has not been exhibited, but, from the draft exhibited by

the plaintiff, the line of the railroad as laid out through the borough is presented, together with a plan of the streets and alleys adjacent.

In the course of the operating of said railroad, it is alleged by the company that the demands of the increasing passenger and freight traffic have made it necessary to lay an additional track through said borough, on the eastern side of the existing track. A portion of the bed for said track has already been prepared, and workmen have been engaged in prosecuting this work, until, by the recent action of the borough authorities of Freeport, forcible measures have been employed to hinder and prevent the railroad operatives from laying the track as proposed.

In this behalf, on the part of the borough authorities, it is contended that through that part of the town between Second and Fourth streets, there was originally an alley laid out and dedicated as a public thoroughfare, and that as to that the railroad company have not the right, under any grant or law, to appropriate or use it as a railway track; and that if the same had been a part of the canal and passed into the possession of the railroad company, by the transfer of the canal property or by an original taking at the time of the location of the railroad through the borough, the right of the railroad company had been lost by non-user, and by adverse possession on the part of the public for a period of upwards of twenty-one years. In this behalf affidavits have been presented, going to show that the public have time out of mind continued to use the ground, now sought to be taken by the railroad company, as an unmolested way or thoroughfare.

Anterior to the erection of the canal, the locus in quo would appear to have been entirely open to the public; the population was then inconsiderable, and the streets and alleys not clearly defined on the ground. After the canal was located and appropriated to public use, the part now occupied by the present main track was the bed of the canal, and the part on the east side was used as a towing path, to the width and extent required by the operation of the canal. If the alley lying south of Second street and north of Fourth street, as appears from the draft annexed to the plaintiff's bill, were extended so as to close the gap, it would evidently, in part, occupy the ground

Opinion of Court below.

now occupied by the main track of the railroad, formerly the bed of the canal, and in part what was formerly the towing path.   Hence, it is clear that as a distinct and continuous alley it was obstructed in a very great measure by the canal basin and towing path, if not entirely displaced.

After the construction of the canal, as population increased the ground east, or on the river side, of the canal became occupied with various erections and residence buildings on town lots, east of the canal and fronting on Water street, at one time or other having been laid out, the rear of these lots evidently abutting the towing path, and in that respect fronting the canal.   Houses were also erected on these lots outside of the towing path facing the canal, and depending for entry and exit upon the open front afforded by the towing path. This use of the towing path was certainly acquiesced in by the canal company, and no difference how long such use has continued or how great it may have been, no rights of absolute user could have accrued either to the public or to the owners or occupiers of the lots, the property to the canal and its appurtenances being vested in the commonwealth: Haldeman v. Railroad Co., supra.

Whether or not there had been a previous condemnation for the state, it does not appear.   The presumption is that there was.   This question however is ruled by the case of Robinson v. Railroad Co., supra.   It is clear, then, that the railroad company, upon acquiring the canal and its appurtenances, took the property clear of encumbrances of any kind.   We do not, from the facts before us, hesitate in the conclusion that the ground now proposed to be occupied was a part of the canal, towing path, etc., and embraced the property transferred to the railroad company.

Since the acquisition of the property, more than twenty-one years has elapsed before the institution of these proceedings. And, although the railroad company acquired a fee-simple title to the freehold, the same immunity does not apply to the railroad company that does to the commonwealth, the railroad company occupying and enjoying only the position that any other citizen would, exclusive of its right of way.

It is shown the railroad track was laid in its present position a number of years ago.   A station house was erected and a

side track also constructed, on the property acquired from the canal. The station house is opposite part of the ground now sought to be taken; whilst the present main and side tracks extend along and outside, but immediately contiguous to this ground. These erections have been maintained continuously for railroad purposes, and up to this time have furnished all the facilities for operating the road that have been required. They doubtless occupy a part of the site of the alley, as would be shown by closing the gap indicated on the draft lying between Fourth and Second streets. So, in that respect, the public have acquiesced for a number of years in the occupation of at least a part of the alleged alley, thereby recognizing the right of the railroad company to the ground so occupied.

Now, whilst the canal was in operation, the necessities for the alley were in part supplied by the consentable use and enjoyment of the towing path between those streets, but this enjoyment was only permissive.

The towing path between the two streets also occupied the site of alley, at least in part. The railroad company have also permitted the public to enjoy at least so much of the ground outside of these tracks as has not been required heretofore in the operation of their road. But the railroad company have been in actual occupancy of the ground so far as it has been necessary. It has never disclaimed ownership to any part of the ground it now seeks to use and to which it clearly has title. Must it be assumed that, in order to maintain its title, it must cover its whole extent of right of way with tracks or other erections? It is well understood that the ordinary right of way for railroad lines is sixty-six feet in width. In only a few instances in the state can it be shown that this extent of ground has been occupied by continuous tracks; and yet, is it ever true that the railroad company has lost its right to the ground adjacent to its tracks on either side by such an omission to occupy? The nature of such thoroughfares and public highways as railroads must be taken into consideration. They are, perhaps, to a larger extent than anything else in modern years, developing agencies, tending largely to develop business and increase population. With this increase of population and of business, facilities only contemplated at the beginning but not completed have to be provided from time to time to meet the

public demands. Hence it would be unreasonable to hold that the mere nonuser of a part of a railroad location, side by side with the part in actual continuous use and embraced in the original grant, would revert to the public, simply because the public had enjoyed a permissive, not a hostile use, of this contiguous ground.

We think the construction of a track or tracks, upon a part of the location throughout its length, is the best assertion of right to the entire width that could in the nature of railroad construction and operation be demanded. By the side of every railroad track extending throughout the country beaten paths may everywhere be found, daily used and traveled upon by the public and enjoyed as the easiest and most convenient thoroughfare, for such in reality they become. And yet the thought is never entertained that the public, by the most constant and continuous use of such ground, acquires an indefeasible title to it. The reason is palpable. The presence of the railroad tracks constantly in use is the defiant badge of ownership. It is the only practical assertion of title that can be made. The rule does not differ because the location of a road is through a more populous district, in this case through a borough, whose citizens have availed themselves of the convenience of using the ground along the railroad track, notwithstanding the railroad ties and rails of the company may not have spanned and bound literally, with an iron grasp from one side to the other, its authorized domain.

The answer filed by the defendants seems to admit the right of the plaintiffs to use the ground on the west or upper side of the tracks, in effect admitting that as to that side of the railroad the borough has no claim. Unless it were shown that the plaintiffs have occupied to the full extent of their claim or title on the lower side, we can see no better right that the plaintiffs would have to the ground on the upper or west, than they have to the ground on the lower side. The west or upper side of the canal was what was known as the berme side, and therefore the side not occupied in the operation of the canal, consequently, furnishing less evidence of appropriation to canal purposes than would the other, or towing path side.

Whilst, as an abstract question, we would think that railroad corporations, deriving their powers and privileges from the

Opinion of Court below.

concessions of the public, should at all times so use those powers and privileges as to do least injury to the public, yet, even the public, as to the exercise of any such powers, cannot set up a mere matter of local convenience or advantage, as against the actual right conceded to the railroad corporation, of locating its tracks upon its own right of way or property. The suggestion that the occupation of the berme side of the canal would do less local injury, cannot be regarded as a reason for compelling the railroad company to lay its track on that side, if it is of greater advantage to the company in the construction of a general thoroughfare or public highway, intended for the benefit, safety and convenience of the general public, as well as its own, to place the track where it now proposes to place it.

Whether or not the question of the application of the statute of limitations to the unused space of ground within a line of location of a railroad and outside of the actual tracks, has ever been raised in this state in the Supreme Court is not clear. It is however a fact well known that in the populous districts of Allegheny county, traversed by the Pennsylvania railroad, the railroad company have, either under the law or outside of it, asserted its claim successfully to the full extent of location, and wherever a cut has been necessary the sloping has been upon the land of the adjacent owner. How far this has been controlled by charter or agreement we do not say.

This question was raised in an action of ejectment in Westmoreland county in the case of Penna. R. Co. v. Gray, at No. 993 August Term 1875, reported in 2 Railroad World, 399. The case was tried before His Honor J. P. Sterrett, then an able and experienced judge of Allegheny county, and now a learned member of the Supreme Court. The case presented two features: one, that whatever right the company had to the land outside of the original location for roadbed, nearly, sixty-six feet, it was lost by reason of non-user and the statute of limitations, it having been shown that the defendant had closed it in by fencing it; second, that that part of the actual roadbed, closed in by the defendant, was also lost to the plaintiffs by reason of the statute of limitations. Judge Sterrett in answering the defendant's point, says, "that the statute will not run against the plaintiff's right of way. The charter makes the road a

Arguments.

public highway, and we are satisfied that the statute of limitations will not run against the plaintiff's right of way, and as a matter of law we so instruct you."

That this ruling was conceded to be the law, is evidenced from the fact that the case has not been reviewed. But it is claimed that an injunction should not be granted unless in a clear case, free from doubt. This is certainly true, but we do not regard the present a doubtful case. That the plaintiffs have the right to appropriate and use to the full extent of whatever was owned and used by the canal, there can be no question. The only question is the extent of ground owned by the canal. There is nothing that I recall before me showing that the railroad company proposes taking more. The objection made is that they have no right to take any, at least sufficient for an additional track.

Possibly, in case of less positive emergency delay would be advisable; but the evidence and facts in this case are of such a character as to admit of no doubt that if the plaintiffs have the right of way over the ground in dispute, delay would be highly injurious to the general public, in the present necessity of additional, enlarged and safer facilities of a railroad thoroughfare.

And now, January 4, 1890, for the reasons set forth in the petition and affidavits, and for the reasons set forth in this opinion, the prayer of the petitioners for a preliminary injunction is allowed and sustained.

—A preliminary injunction having issued, restraining the defendants from interfering with the laying of said second track, the defendants took this appeal, assigning the decree for error.

*Mr. M. F. Leason* (with him *Mr. G. M. Hill* and *Mr. J. H. McCain*), for the appellants.

Counsel cited: Act of April 8, 1833, P. L. 320; act of February 25, 1826, P. L. 55; § 9, act of April 9, 1827, P. L. 198; Commonwealth v. Railroad Co., 27 Pa. 339, 354; Duncan v. Railroad Co., 7 W. N. 556; Commonwealth v. Cole, 26 Pa. 189; Schenley v. Commonwealth, 36 Pa. 29.

*Mr. Joseph Buffington* (with him *Mr. Orr Buffington*), for the appellee.

Syllabus.

Counsel cited : (1) Robinson v. Railroad Co., 72 Pa. 316; Commonwealth v. McAllister, 2 W. 190 ; Haldeman v. Railroad Co., 50 Pa. 425 ; act of May 16, 1857, P. L. 519 ; act of April 27, 1864, P. L. 634 ; § 10, act of February 19, 1849, P. L. 83 ; act of March 22, 1860, P. L. 322 ; act of February 9, 1853, P. L. 53.　(2) Phila. & Trenton Railroad Co., 6 Wh. 44 ; Commonwealth v. Railroad Co., 27 Pa. 354 ; Cleveland etc. R. Co. v. Speer, 56 Pa. 332; Anspach v. Railroad Co., 5 Phila. 491 ; Lodge v. Railroad Co., 8 Phila. 345 ; Phila. etc. R. Co. v. Williams, 54 Pa. 106 ; Black v. Railroad Co., 58 Pa. 252. (3) Commonwealth v. McDonald, 16 S. & R. 401 ; Kittanning Acad. v. Brown, 41 Pa. 269; Griffin's App., 109 Pa. 155; Gowen v. Exchange Co., 5 W. & S. 144; Root v. Commonwealth, 98 Pa. 174; Susq. Co. v. Deans, 33 Pa. 133; Pittsb. Junction R. Co.'s App., 122 Pa. 512.　(4) Clark v. Railroad Co., 3 Phila. 259; Penna. R. Co.'s App., 128 Pa. 509; Easton Ry. Co. v Easton, 133 Pa. 505.

PER CURIAM :

The learned judge of the court below has given sufficient reasons in his opinion, for awarding the preliminary injunction. The decree is affirmed, and the appeal dismissed, at the costs of the appellant.