### NORTHERN PAC. R. CO. v. CITY OF SPOKANE et al.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1894.)

No. 138.

DEDICATION—RIGHT TO CROSS RAILWAY TRACKS.

A railroad company to which congress has granted a right of way across the public lands and sections of lands adjoining such right of way, in aid of the construction of its road, has power to dedicate to the public the right to cross its tracks and right of way.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

This was a proceeding by the Northern Pacific Railroad Company against the city of Spokane and others to restrain the city from destroying a depot alleged to be an obstruction to a street crossing, and also from preventing the erection of a new depot. A temporary restraining order was dissolved in so far as it forbade the hindering of the railroad company in the erection of a new depot. 52 Fed. 428. On final hearing, the bill was dismissed, 56 Fed. 915. Complainant appeals.

Ashton & Chapman and J. R. McBride, for appellant.
James Dawson and George Turner, for appellees.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The Northern Pacific Railroad Company brought a suit against the city of Spokane and others to restrain and enjoin the defendants from laying out and extending a certain street known as "Mill Street," over and across the right of way of the complainant's railroad in said city. The bill alleges that by virtue of the act of congress approved July 2, 1864, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific Coast, by the Northern route," and the several acts amendatory and supplemental thereto, there was granted to the complainant a right of way through the public lands, to the extent of 200 feet in width on each side of its road, wherever it may pass through the public domain, and that there was further granted to the complainant, for aid in the construction of its road, among other lands, section 19,

township 25 N., range 43 W., upon which that portion of Mill street in controversy in the suit is situated; that since the construction of the complainant's road, and for more than eight years prior to August 4, 1889, the complainant maintained its freight station building on that portion of its right of way lying north of its track in said section 19, covering the land in controversy, and that on or about said last-named date the freight sheds and freight station buildings were destroyed by fire, but that within a few days thereafter the complainant rebuilt the same, with the knowledge and acquiescence of said city and its officers; that the said city claims to have some right or interest in the ground, and the right to occupy the same as a street, but that the city has no right thereto, and has taken no steps as required by law to authorize its occupation thereof for any purpose, but that the said city, through its counsel, has declared its intention to summarily tear down and remove said buildings, and to open the said Mill street across the complainant's premises. The defendants answered, in substance, that the complainant had dedicated said strip of land to the public as a street on the 20th day of January, 1881, and that the public had continuously used the same from that time. Upon these issues testimony was taken. Upon the trial the court found that the street had been so dedicated by the complainant and used by the public, and thereupon the bill was dismissed. Upon the appeal the complainant contends—First, that the record contains no competent evidence showing a dedication; and, second, that the complainant had no power to dedicate any portion of its right of way for street or other public purposes.

So far as the facts are concerned, it is reasonably clear that the railroad company dedicated the land in controversy to the public for street purposes. The evidence is that about the year 1880 or 1881, after the town of Spokane had been laid out and platted by the original town-site proprietors, the railroad company laid out what is known as "Railroad Addition," adjacent to the original town, and, by agreement with the original town-site proprietors, made the streets of the addition conform to those of the original town, continuing the streets and the names thereof through the addition and across the right of way, and thereupon filed a plat of the addition, upon which its right of way was designated as "Railroad Street," and certain streets were platted as crossing the same, among which was Mill street. There is no indication upon the plat that it was the intention of the railroad company to close Mill street where the same crosses Railroad street, but, on the contrary, the lines of the plat show Mill street to be open across Railroad street. In the words of dedication which accompany the plat, however, the railroad company used the following language:

"The streets shown upon said plat are dedicated to the use of the public until vacated, except that strip of land, 225.7 feet in width, designated as 'Railroad Street,' which is reserved for the tracks and uses of said railroad company."

It is contended that the words of reservation concerning Railroad street operate to except from the dedication all the land contained within the north and south lines of that street, and to cut in twain

the streets which upon the plat are indicated as crossing the same. It is obvious that the plat and the words of dedication are to be construed together in arriving at the intention of the dedicator. With this rule of construction in view, it is clear that Railroad street is reserved from dedication to public use, so far as it is necessary to be retained for the tracks and uses of said railroad company, but that at the same time, and coexistent with the reservation, the company has granted by its dedication to the public the easement to cross its tracks and right of way at certain fixed and designated points; namely, at the streets which are marked as crossing the same. If it had been the intention of the company to withhold from the public the right to cross its Railroad street by the streets which intersect it at right angles, that intention could have been readily expressed, either in words or by lines drawn in the plat to close the cross streets at their point of intersection with the lines of Railroad street. The action of the company from the time of laying out Railroad addition is in harmony with this interpretation of the dedication. The evidence is, that the cross streets, including Mill street, Post street, Howard street, and others, were used by the public from the time the plat and dedication were filed; that the railroad company expressly admitted the rights of the public in Post street where it crosses Railroad street, by removing therefrom, at the demand of the city, a building then in course of construction, which encroached upon the lines of the street. The company, moreover, sold lots in said addition, fronting upon Railroad street, and accessible only by means of Railroad street.

It is contended, further, that the railroad company had no such interest in the land inclosed within the limits of Railroad street as to authorize it to dedicate to the public the right to cross the same; that its right of way was granted by the United States solely for railroad purposes; and that, although the fee to section 19 passed to the company under section 3 of the granting act, there was, nevertheless, no merger of the right of way in the fee of the land so granted. In the view we take of the law of the case, it is not necessary to consider whether the right of way conferred by congress was merged in the fee of the land over which the same was located, and which was granted to the company in aid of the construction of the road. It clearly was not contemplated by congress that the right of way of the Northern Pacific Railroad Company should not be crossed at innumerable places. There is nothing in the language of the grant to indicate an intention that the grantee should be deprived of the power to permit the public to cross from one side to the other of the granted strip, or that there should be reserved to congress the sole authority to determine at what points and under what circumstances such crossings should be established. The grant was in that respect unrestricted in its terms. Its only limitation was the implied one that the railroad company might not divert the granted strip to other and foreign uses, and might not cede to the public rights and easements so extensive or of such a nature as to interfere with its duties to regularly and properly operate a railroad.

It was known that the railroad would extend through towns and cities then existing, and through others that would spring up along its line, and that the rights of the company in and to its right of way would be subject to the power of the municipal corporations through which it passed to extend public streets across the same. That power which is implied in the general authority conferred by city charters for that purpose is conceded to have been vested in the municipal authorities of the city of Spokane; but it is said that, while the easement to cross the right of way might have been wrested from the company by proceedings in invitum, it had no authority to voluntarily cede the same. We see no valid ground on which to base this distinction. The nature of the right of way over the public lands which the railroad company obtained by the grant was not different from that which it acquired over private lands by purchase or by condemnation proceedings, under the laws of the several states through which it passed. Whether the company acquired the fee to the lands covered by its right of way or not, no reason is apparent why it may not dedicate public easements over and across the same, and by its own act grant to the public all the rights which the latter might obtain by the exercise of its right of eminent domain. Of course, the railroad company could confer upon the public no greater estate than it possessed, and, in any view of the case, the dedication could not affect the reserved rights of the United States, whatever they might be. The public easement, so dedicated, is undoubtedly subservient to the exigencies of railroad use, and the public take the dedicated crossing subject to the inconveniences which may result from the increase of traffic and transportation along the line of the road, and the possible necessity of laying more tracks thereupon; but the company, after such dedication, and after rights have been acquired thereunder, may not close up the street with a building, and may not say, as in this case, that because it is convenient to have a warehouse at this point, and because there is no place within the city so desirable for that purpose, it will revoke the rights which it has conferred upon the public by the dedication. One of the objects of congress in making the grant was to upbuild and develop the country through which the road was to pass, and it is in harmony with this purpose, as well as in line with the adjudicated cases, so far as they have approached the question under consideration, to hold that such public use is not inconsistent with or subversive of the railroad use, which was intended by congress. It has been held that trustees holding lands for public uses, and corporations having public duties, may dedicate to public use for highways, when such use is not inconsistent with the purposes for which the lands were vested in trust, or incompatible with the duties required (Rex v. Leake, 5 Barn. & Adol. 469; Canal v. Hall, 1 Man. & G. 392); and that a railroad company may dedicate a highway across land already dedicated to public use as a railroad (State v. City of Bayonne, 52 N. J. Law, 503, 20 Atl. 69); and that railroad corporations have the same rights to dedicate their lands to public use as any other proprietors, unless it is contrary to the provisions of their charters, or amounts to a breach of

their duty to their stockholders (Green v. Canaan, 29 Conn. 157; Williams v. Railroad Co., 39 Conn. 509). The appellant cites the case of Illinois Cent. R. Co. v. City of Chicago (Ill. Sup.) 30 N. E. 1036, where the court said:

"It is plain that, under the act of congress donating lands for the construction of a railroad and the charter of the railroad company, the strip of land—the right of way—is devoted to a certain specified purpose, and cannot be diverted from that purpose."

The language so quoted from the decision in that case must be considered in the light of the question then before the court. It was a case of a special assessment against the right of way of the Illinois Central Railroad to pay for the improvement of a street, upon the theory that the right of way was benefited by the street improvement. The court held that the right of way granted by congress for a special purpose was not chargeable with such an assessment; that the strip so devoted to public use was not land which could be laid off into lots and blocks, and sold by the railroad company for its own advantage, or used as private property is used by individuals; and that, therefore, its value, for the purpose for which it was dedicated, was not capable of being enhanced by the improvement of an adjacent street. This is far from holding that a railroad company may not, in recognition of public interests, and for the promotion of the public welfare, dedicate to the public an easement over its right of way which does not interfere with its own use of the same for a railroad. The decree is affirmed, with costs to the appellees.