MATTHEWS v. SEABOARD AIR LINE RAILWAY.

1. RAILROADS—RIGHT OF WAY—PRESCRIPTION—ADVERSE POSSESSION—NEGLIGENCE—LICENSEE—JURY.—While the public cannot acquire the right to use the right of way of a railroad company by prescription in a manner inconsistent with its corporate uses (may such use be required by adverse possession?), yet a railroad company, by long acquiescence in the use of its right of way as a path by pedestrians not inconsistent with its corporate uses, may invite the public to so use it, and one so using it becomes a licensee, and, if he knows the dangers of the path, he uses it at his own risk; but the company is liable to one using the path who is ignorant of its dangers, in the absence of guards or notice, and the questions of invitation and contributory negligence are for the jury.

2. IBID.—IBID.—NEGLIGENCE—TORTS.—Where one railroad digs an excavation under and across the tracks of two parallel roads, between which was a path long used by pedestrians in a city, over which a bridge had been built, but allowed to rot away, and the public still used the path deflected at the excavation to cross a bridge kept by one of the parallel roads between its main and side tracks, all the companies are liable as joint tort feasors to one injured by falling in the excavation at night, who was ignorant of the deflection in the path and of the absence of the bridge.

Before McCULLOUGH, special Judge, Greenwood, May, 1902.  Affirmed.

Action by C. P. Matthews, administrator of Jno. E. Partlow, against the Seaboard and Roanoke R. R. Co. and the Raleigh and Gaston R. R. Co., operating the system known as the Seaboard Air Line R. R., as lessees of Georgia, Carolina and Northern Ry.; Southern Ry.; Charleston and Western Carolina Ry. Co·, and town of Greenwood.  All defendants appeal except the latter.

*Messrs. S. J. Simpson* and *F. Barron Grier,* for C. & W. C. Ry. .The former cites: *Licensee must take advantages with attendant disadvantages:* L. R., 11 Q. B. D., 474; 9 Id., 80; 46 Md., 193; 1 McC., 438; 115 Ind., 399; 42 Ill. App., 93; 100 Ind., 221; 19 Blatc., 239; 142 Mass., 296; Cooley on Torts, 720; 25 Mich., 1; 32 N. W. R., 223; 90 Mo., 284; 7 S. W. R., 756; 120 Mass., 306; 33 N. W. R., 744; 16 At. R., 701; Whitaker's Smith òn Neg., 61; Thomp. on Neg., ed. 1901, sec. 946; 64 S. C., 7. *Liability of land owner for excavations:* 1 Thomp. on Neg., sec. 1228. *Liability is not joint:* 13 R. I., 159; 80 Mo., 529; 1 Ency. P. & P., 204; Pom. Rem., sec. 308; 14 Min., 133. *Plaintiff guilty of contributory negligence:* 1 Thomp. on. Neg., secs. 385, 352; 58 S. C., 491.

The latter cites: *Defendant owed no duty to deceased:* 18 S. C., 417; 58 S. C., 367; 33 S. C., 213; 16 Ency., 411; 70 Ga., 207; 114 U. S., 340; 10 Ency., 24; 64 S. C., 104; 53 S. C., 514. *What duty is due a trespasser:* 16 Ency., 413; 57 S. C., 253; 18 Ency., 925, 937; 3 Ell. on R. R., sec. 1253; 57 S. C., 243. *Permissive use:* 87 Am. Dec., 644; 102 U. S., 235; 3 Ell. on R. R., secs. 1250, 1253, 1154; 50 Am. R., 783; Wood on R. R., 1462; 24 Penn. St., 465; 19 Ency., 935; 22 Am. R., 114; 54 L. R. A., 314; 20 L. R. A., 714; 55 L. R. A., 310; 32 L. R. A., 533; 58 Am. R., 512; 59 S. C., 462; 7 Am. Dec., 60. *R. R. not required to bridge this excavation:* Code 1902, 2149, 2136; 58 S. C., 491; 5 S. E., R., 371. *Liability is not joint:* Pom. Rem. & Rem. Rights, 2 ed., sec. 308; 195 Pa. St., 391.

*Mr. T. P. Cothran,* for Southern R., cites: *Individuals cannot obtain. right to use right of way by prescription:* 21 A. & E. R. R. Cas., 667; 19 Id., 24; 4 Band Ald., 578; 18 Wend., 9; 1 Flip., 129; 29 Pa. St., 287; 75 Fed. R., 737; 70 Ga., 207; 41 L. C. A.; 406; 18 A. & E. R. R. C., 364; 8 L. R. A., 180; 23 L. R. A., 207; Jones on Eas., secs. 2, 81; 91 Cal., 631; 50 Cal., 265; 65 Cal., 435; 53 Cal., 530; 92 Cal.,

414; 93 Cal., 51; 20 A. & E. R. R. Cas., 579; 21 Id., 665. *Was intestate a licensee?* 64 S. C., 7; 3 Ell. R. R., sec. 1250; 57 S. C., 332. *As to duty of Southern Ry. to intestate:* 23 Am. R., 751; 57 S. C., 339; 7 C. B. (N. S.), 731; 51 Mich., 601; 118 N. Y., 575; 80 Hun., 364; 10 Ill. App., 477; 16 A. & E. R. R. Cas. (N. S.), 690; 87 Am. D., 644; 72 N. Y. S., 1076; 114 Fed., 613; 14 L. R. A., 276; 21 N. E. R., 369; 9 L. R. A., 641; 115 N. Y., 55; 20 L. R. A., 714; 2 Thomp. on Neg., sec. 1705.

*Mr. J. L. Glenn,* for Seaboard and Roanoke R. R., cites: *Prescriptive right to use a railroad track cannot be acquired by use:* 64 S. C., 104; 22 Ency., 1189; 41 S. C., 1. *What duty does company owe one on its premises not by invitation or inducement:* 14 L. R. A., 276; 149 Mass., 268; 16 Am. & Eng. R. R., 690; 10 Allen, 372; 3 A. & E. R. R. Cas., 501; 57 Id., 308; 14 Neb., 295. *There is no joint liability:* 15 Ency. P. & P., 740; 22 S. E., 159; 15 Minn., 133; 195 Pa. St. R., 396.

*Messrs. Graydon & Giles* and *Wm. N. Graydon,* contra. *Mr. Ellis G. Graydon* cites. *As to joinder of causes of action:* Code of Proc., 188; 26 S. C., 480; 24 S. C., 39. *As to duty of defendants and its breach:* 89 Am. Dec., 720; 72 Am. Dec., 493; 56 Barb., 121; 8 Ency., 367, 369, 371, 373, 375; 38 Minn., 538; 14 L. R. A., 393; 18 N. Y., 79; 26 L. R. A., 686; 60 S. C., 67; 62 S. C., 325; 152 U. S., 262; 102 U. S., 577; 55 Am. R., 88; Thomp. on Neg., secs. 969, 1012 to 1016; 78 Fed. R., 78; Wat. on Per Inj., 279, 288; 31 Am. Dec., 306; 44 Pac. R., 1051; 63 Fed. R., 945.

November 27, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff, as administrator of John E. Partlow, instituted this suit for damages, alleging his intestate was killed by falling into a railroad cut, in the

town of Greenwood, and that the accident was due to the joint negligence of the defendants. The defendants demurred on the ground that the complaint fails to state facts sufficient to constitute a cause of action. The demurrer of the town of Greenwood was sustained, and the plaintiff did not appeal. The separate demurrers of the three railroad companies were overruled, and they have all appealed.

The appeal involves no question concerning the incorporation, sales and leases of the several railroads, which are set out in the complaint, and no reference need be made to them. The following statement contains all the allegations of the complaint necessary to the discussion of the questions involved. The Columbia and Greenville Railroad was built in 1852, from Columbia to Greenville, and is owned and operated by defendant, Southern Railway Company. The Charleston and Western Carolina Railroad was built in 1882, from Augusta, Ga., to Spartanburg. The Georgia, Carolina and Northern Railroad, known as part of the Seaboard system, was built in 1890, and at Greenwood passes under the Southern Railway and the Charleston and Western Carolina, at right angles, through a cut about thirty feet deep and eighteen feet wide. The Southern Railway and the Charleston and Western Carolina Railway, for about two hundred yards above the crossing toward Greenville and about five hundred yards below the crossing toward Columbia, run parallel to each other and about ten or twelve feet apart. The sides of the cut for a distance of about sixty feet are held secure by granite walls, and the crossing is made by iron girders resting on the sides of these walls. The walls are entirely within the limits of the rights of way of the two roads by which they are crossed. The Southern Railway has a side track running across the cut parallel with its main line, on the side opposite to the track of the Charleston and Western Carolina Railway, and has always maintained a bridge across the cut between its main line and side track. Negligence is charged against all the defendants, in that they allowed the cut to remain open and unprotected, and ˄

failed to keep a light burning at the cut, or to give any notice or warning of its danger, although it was in the corporate limits of the town, within two hundred yards of the public square, and crossed one of the main thoroughfares; the defendants, well knowing the danger of leaving it thus unprotected, their attention having been called to it, several persons having fallen into it, and at least one having been killed by the fall.

It is further alleged: "That at least twenty years before the building of the said Georgia,, Carolina and Northern Railroad, there was a well-beaten path, a regular traveled place, over which the public had acquired a prescriptive right to travel, and used by the public at their will and pleasure, along the space now between the track of the said Columbia and Greenville Railroad and the Charleston and Western Carolina Railroad, both above and below the said cut, which path or traveled way the public have continued to use up to the present time." Negligence is charged against the Georgia, Carolina and Northern Railway Company in not building a bridge across the cut it had made, thus leaving it open and exposed and in a dangerous condition.

After the cut was made, the path was deflected from its orginal course, about six feet from the cut, across the main track of the Southern Railway, aad thence it led over the cut on the bridge built by the Southern Railway between its side track and main line. It is alleged the defendants all well knew the public were using the path as a passageway or sidewalk for pedestrians, with a right to do so, but none of them gave any notice or warning to the public not to so use it, but, on the contrary, such use was "with the knowledge, acquiescence and consent of them all." The complaint then gives the following account of the accident: "That on the night of March 13th, 1899, John E. Partlow, who was a citizen of Greenwood County, but not a resident of the town of Greenwood, and not acquainted with the cut and its surroundings, left the home of his daughter, Mrs. Bessie P. Andrews, in said town, to go down to the public square of said town, on

some matter of business or pleasure, walked along the said path, and on account of said cut being open and unprotected, his ignorance of its presence, and his being unable to see it in the darkness of the night, fell into the same, without fault or negligence on his part, and was so bruised and hurt by the said fall that he died from his injuries on the second day of April, A. D. 1899."

Responsibility is thus charged on the defendants, as a conclusion from the allegation above set forth: "That the direct and proximate cause of the death of the said John E. Partlow was the gross and concurring negligence of the said defendants in constructing said cut, and in allowing it to remain open and unprotected in the manner aforesaid, although they each and all well knew the danger of allowing it so to remain, and although it was the duty of each and all of them to cover or guard the same."

Since the accident, the town of Greenwood has bridged over the cut with strong and heavy timbers, and erected a fence at each end of the bridge; and the Southern Railway Company has erected a fence as a guard on the outside of the upper or northern granite wall, between its main track and the track of the Charleston and Western Carolina Railway Company, where the town had previously had a fence, which had fallen into decay.

In the foregoing synopsis of the complaint, no reference is made to allegations concerning the duty and neglect of the town of Greenwood, for when its demurrer was sustained without appeal, its alleged liability was eliminated from consideration.

The first question made by the demurrers is whether the plaintiff's intestate was using a way over which the public had by prescription a right to travel. There are some authorities which hold a railroad company may release or convey a portion of its right of way, and hence that individuals may acquire a private right of way, or the public a highway, over the company's right of way by continuous, open and adverse use for twenty years.

*Gay* v. *R. R. Co.* (Mass.), 6 N. E., 236; *Turner* v. *Ry. Co.* (Mass.), 14 N. E., 627; *Blumenthal* v. *State* (Ind.), 51 N. E., 496; *Ry. Co.* v. *Crownpoint* (Ind.), 50 N. E., 741; *People* v. *Ry. Co.* (Calif.), 33 Pac., 728; 22 Am. & Eng. Ency. Law, 1220; Elliott on Railroads, sec. 425.

The subject is referred to in *Boggero* v. *Ry. Co.*, 64 S. C., 104, 41 S. E., 819; *Jones* v. *Ry. Co.*, 61 S. C., 560, 39 S. E., 758; *Haltiwanger* v. *R. R. Co.*, 64 S. C., 7, 41 S. E., 810; *Hankinson* v. *R. R. Co.*, 41 S. C., 1, 19 S. E., 206, and *Ringstaff* v. *Ry. Co.*, 64 S. C., 546, 43 S. E., 22; but the question here made was not decided or involved in any of these cases.

The doctrine above stated, under out statutes and the general principles of law, should be received, we think, with an important limitation. Railroad companies are allowed to acquire rights of way by condemnation because of the interest the public has in the construction and operation of their roads as highways, and hence a right of way so acquired is burdened with duties to the public. Therefore, it may be stated as a general proposition, while the railroad company may deal with the right of way so acquired as its own in the conduct of its business as a carrier, it cannot dispose of it or use it so as to destroy or impair its ability to serve the public. 5 Thompson on Corporations, secs. 5878 and 6137; *Thomas* v. *R. R. Co.*, 101 U. S., 87; *Ry. Co.* v. *Hyatt* (Calif.), 64 Pac., 272; *Collett* v. *Com'rs.* (Ind.), 21 N. E., 329; *R. R. Co.* v. *Spokane*, 64 Fed., 506. Our statute under which the right of way is acquired provides that nothing therein contained "shall be construed to confer upon such person or corporation any right in, or power over, the lands so condemned, other than such as may be within the particular purpose for which such lands were condemned." Civil Code of 1902, sec. 2194.

Nevertheless, it is absolutely necessary that there should be many crossings for the use of those passing from one side of railroads to the other for business and social purposes, and it is sometimes essential that a public road or another rail-

road should run parallel with a railroad already constructed within the limits of its right of way. In recognition of this public necessity, the law allows condemnation of a way for such purpose over lands already acquired for a railroad right of way, ·"provided, that in the construction of such other highway there be no hindrance to the use and enjoyment of the highway for which such lands or right of way were previously procured." Civil Code, sec. 2195. When conditions arise which would justify the condemnation of a way over a railroad right of way, the railroad company, no doubt, could, without violating its duty to the public, waive condemnation and allow the easement over its own right of way, subject to the condition indicated by the statute that the new highway should be so constructed as not to interfere with its own use to such an extent as to impair its ability to perform its public duties. Prescription can only arise from presumption of a grant or dedication; under our own statute, the railroad company has no power over a right of way acquired by condemnation except to use it for railroad purposes, and it, therefore, cannot grant it to another for other uses. The statute further forbids any portion of the right of way being taken under the State's right of eminent domain for another public highway, except with the provision that such other highway shall be so constructed as not to interfere with the first public purpose for which the land was set apart. The public may no doubt acquire a right to use a particular way over lands set apart for a railroad right of way by use clearly shown to be adverse for twenty years, in the sense that after that lapse of time the railroad authorities cannot arbitrarily forbid the use of such way for any reason not connected with the operation of the railroad; but since the company cannot grant its right of way so as to defeat the purpose for which it was acquired, and it cannot be condemned for another highway so as to hinder these uses, it cannot be presumed that there ever was any grant or dedication to a public use inconsistent with the purpose for which the property was acquired by State authority. The

use made of the right of way by others, with or without the consent or acquiescence of the company, must be regarded subject to the right to use the property for the conduct of the railroad's business as a carrier for the public.

Besides, the width of the strip of land necessary for railroad purposes is fixed under the authority of the State, and this fact creates a strong presumption that the whole of it should be preserved as necessary for the purpose for which it is set apart, except when burdened with condemnation for another highway; and the mere use for purposes of travel of a portion of the right of way, however long and notorious, should be regarded not adverse, but subject to yield to the end the State has in view, in exercising its power of eminent domain in setting it apart and fixing its limits. The case under consideration affords a striking example, not only of the reasonableness, but of the necessity of this rule. Two of the great railroad systems have acquired rights of way and are running their main lines through the town of Greenwood, ten or twelve feet apart. If the people of that vicinity are held by the use here alleged to have acquired a right, not subject to railroad purposes, to the space not actually occupied by the railroad tracks, it would inevitably interfere not only with the construction of side tracks or double tracks, which the development of the country may render essential to the public convenience and welfare, but also with the present operation of trains. The rule founded on legal principles and demanded by public necessity is thus stated in Jones on Easements, sec. 281: "A prescriptive right to a passageway along the track or right of way of a railroad cannot be acquired by the public or by individuals while the railroad company has constantly used a single track over such right of way. The construction and operation of one track upon its location is an assertion of right to the entire width of its right of way. The presence of a track constantly in use is a defiant badge of ownership, and the only practical assertion of title that can be made. If the public has used paths by the side of the railroad track for any length of time, the

use must be considered as permissive and not adverse. An injunction will be issued in behalf of the railroad company to restrain any interference with the laying of a second track over such part of its way as has been used by the public as a footway for more than twenty-one years." *R. R. Co.* v. *Freeport* (Pa.), 20 Atl., 940.

The complaint alleges this narrow strip had been used by the public for more than twenty years before the accident occurred, but it does not allege it was not used by the railroads for the purposes for which a right of way is acquired, or that it was not necessary for those purposes, or that the foot travel over it was inconsistent with railroad uses, or in any way hostile or adverse. The bald statement that "the public had acquired a prescriptive right to travel" on this strip is a mere legal conclusion, which, so far from being supported by the allegation of fact, is negatived by the statement that the public use was "with the knowledge, acquiescence and consent" of the defendants. *Bailey* v. *Gray,* 53 S. C., 514, 31 S. E., 354. Under the allegations of the complaint, we conclude there was no public right of passage acquired by prescription between the tracks of the Southern Railway and the Charleston and Western Carolina Railway.

It should be observed, the conclusion that the public cannot acquire a way on a railroad right of way by prescription, which is founded on the presumption of a deed, does not imply that title to portions of the right of way may not be acquired by adverse possession which is founded on possession hostile to the true owner. Neither adverse possession nor the doctrine of equitable estoppel, referred to in *Crocker* v. *Collins,* 37 S. C., 333, 15 S. E., 951, is involved in this case.

While a railroad company cannot lose its right of way by alienation or prescription, because of the public's interest in its holding it for public purposes, it may impose upon itself as a private corporation duties and obligations to the public or to individuals, by inviting the use of the right of way, or indicating its willingness that it should be used by the public

or particular indivduals.  In such crcumstances, the duty
devolves on the railroad company to exercise ordinary care
to avoid injury to those so using the right of way.  This
rule is not peculiar to railroads, but is of general application.
The invitation need not be expressed in words, but may be
implied in a number of ways; such, for instance, as the actual
construction or repairing by the railroad company of a road
or a bridge along the right of way, which would not be
suggestive of any other use except travel on foot or in the
ordinary vehicles of the country.

The allegation here is that the defendants acquiesced and
consented for many years to the use by the public of a "well
beaten path, a regular traveled place," along the right of
way of the Southern and the Charleston and Western Caro-
lina Railroads, and at right angles to the track of the Geor-
gia, Carolina and Northern Railroad.  "Acquiescence and
consent" convey the meaning, not only of knowledge and
recognition on the part of the defendants of the alleged use
of the right of way, but actual concurrence in such use.  The
complaint does not allege that the acquiescence and consent
on which plaintiff's intestate would have been authorized by
law to rely in undertaking to travel the path, was evidenced
only by the fact that there was "a well beaten path, a regular
traveled place," but assuming this to be plaintiff's position,
the complaint still states a cause of action.  It is true, that
a railroad track is itself a danger signal to pedestrians.  All
persons in possession of reason must be held to know that so
far from a railroad company being able to construct its road
with regard to the safety of those who walk on it, it must
have numerous dangerous cattle guards, cuts and trestles,
and that no adequate speed of trains could be maintained
if those in charge of them had to have concern for persons
who take the risk, unbidden, of walking on the track or right
of way.  Hence, ordinarily those who walk along or across
railroads, however general the practice may be, are tres-
passers, taking upon themselves all the risks; and the rail-
road company owes them no duty except not to harm them

wilfully or wantonly.  *Jones* v. *Ry. Co.,* 61 S. C., 560, 39 S. E., 758; *Smalley* v. *Ry. Co.,* 57 S. C., 243, 35 S. E., 489. But where a railroad company allows the public to use its right of way for a long time at a particular place in a large town so continuously and frequently that it becomes a well beaten or clearly defined path, plain and open, a reasonable man may well infer that he will not encounter unguarded cuts and the other dangers of the ordinary path along the track.  In such a case, the owner of the property knows and acquiesces in the use, and by his acquiescence those wishing to go in that direction are lured into a sense of safety in following the course obviously taken by those who have preceded them.  If the owners, or those in control of the property, fail to observe ordinary care in avoiding injury to persons who travel the path, relying on the safety suggested by the implied invitation, they must be held responsible.  A contrary view is taken in some cases of very high authority.  *Redigan* v. *R. R. Co.,* 155 Mass., 44, 14 L. R. A., 276; *R. R. Co.* v. *Arnol* (Miss.), 29 So., 768; *Devoe* v. *R. R. Co.* (N. J.), 43 Atl., 899; *Griswold* v. *R. R. Co.* (Mass.), 67 N. E., 354; *Ry. Co.* v. *Martin,* 14 Neb., 295; *Ry. Co.* v. *Griffin* (Ind.), 50 Am. Rep., 783; *Lingenfelter* v. *R. Co.* (Ind.), 55 N. E., 1021; 3 Elliott on Railroads, sec. 1154.  The general rule, in which all the Courts agree, however, is that the owner of property is held to ordinary care to avoid injury to one who enters his premises by invitation, express or implied, but the variance is as to what facts imply an invitation.  In the cases above mentioned, it is held that acquiescence in the use of the right of way for a long time, indicated by a plain, well defined road or path at a particular point, manifestly differing from the ordinary path along the track, does not imply invitation or suggestion to the public to use the path, except where the path is used as an approach to the company's place of business by those having occasion to transact business with the company.

The rule as we have stated it, which is contrary to the doctrine laid down in the above cases, seems to require

nothing more than ordinary good conduct on the part of the owner in the use of his property, to the end that injury to his neighbor may be avoided; and we think it is supported by the current of judicial opinion. *Jones* v. *Ry. Co.,* 61 S. C., 560; *Hanson* v. *So. Pac. Co.* (Calif.), 38 Pac., 957; *Taylor* v. *Canal Co.* (Pa.), 57 Am. Rep., 446; *Burton* v. *R. R. Co.* (Ga.), 25 S. E., 736; *Ry. Co.* v. *Potter* (Kansas), 67 Pac., 534; *Davis* v. *Ry. Co.* (Wis.), 17 N. W., 406; *Barry* v. *R. R. Co.* (N. Y.), 44 Am. Rep., 377; *Swift* v. *Ry. Co.,* 123 N. Y., 645; *Felton* v. *Aubrey,* 74 Fed., 350; *Harriman* v. *Ry. Co.* (Ohio), 12 N. E., 451; *Ry. Co.* v. *McDonald,* 152 U. S., 262; *Bennett* v. *R. R. Co.,* 102 U. S., 577; *Lepnick* v. *Gaddis* (Miss.), 26 L. R. A., 686; note, 26 L. R. A., 688; 23 A. & E. Ency. Law, 732. The English cases are to the same effect. It is, of course, always a question for the jury to determine whether the way was so plain and so constantly used, with the acquiescence and consent of the owner, as to imply an invitation to the public to enter.

It is noteworthy that while in the case of *Redigan* v. *R. R. Co., supra,* the Supreme Judicial Court of Massachusetts seemed to take very advanced ground against the doctrine that invitation may be implied from such conditions as are above stated; yet in the case of *Chenery* v. *R. R. Co.,* 35 N. E., 554, it holds, while long use by the public of a well defined path across a railroad track does not as a matter of law import a license, still it presents a question of fact for the jury, as to whether a license is to be implied, which would subject the railroad to liability for negligence.

The New York Court of Appeals and the Courts of some other States hold that where injury results from mere passive omission of the railroad company to guard or give notice of a dangerous place on its right of way, where the public has been accustomed to use it in the manner indicated above, no liability will be incurred for resulting accident, but that the company will be liable for injury resulting from its active negligence at such place; as, for instance, in running its trains without looking out for the safety of travelers, or

digging a pit, or placing explosives, without adequate notice, at a place where it has acquiesced in the general and frequent use by the public of its railroad track. *Barry* v. *R. R. Co.* (N. Y.), 44 Am. Rep., 377; *Byrne* v. *R. R. Co.* (N. Y.), 10 N. E., 539; *Felton* v. *Aubrey*, 74 Fed., 350. This distinction may fairly be supported on the ground that the people at large may well be held to have notice of the dangers already existing along the path they are accustomed to travel, and the owner may properly assume that they enter the premises in full contemplation of the danger, and of their own volition assume the risk; but they do not assume the risk of dangers brought upon them unexpectedly by the owner of the property. The distinction should not apply to that portion of the public who are not familiar with the dangers of the way, but enter it with sufficient reason to infer it has been used by the public with safety. Applying this view to the allegations of the complaint in this case will, we think, make its reasonableness obvious. Those who walked in the path here described, entered, not a public highway, but the property of the railroad companies as licensees; and even if they did so in pursuance of an invitation, express or implied, but knew of the existence of the cut and its dangerous condition, they accepted the invitation in full view of the danger, and for their own convenience voluntarily assumed it. In such case, it seems clear the railroad companies would not be responsible for resulting injuries. But if the jury should find the path is of the kind to invite entrance and suggest safety, one who enters, relying upon this invitation, in ignorance of danger, and falls into a deep, unguarded cut, at right angles to the path, may hold the railroad companies responsible, in the absence of contributory negligence, if they had reason to expect such persons to enter. The allegation here is that the plaintiff's intestate did not know of the cut or surroundings, and could not see it on account of darkness. We venture to suggest that if this distinction between those who know the danger and those who do not, is borne in

mind, it will reconcile in some measure the apparent conflict of authority on this subject.

Before leaving this branch of the case, it may be well to observe there is an obvious difference between a case like this, where there are allegations of such apparent use by the public as to suggest safety and invite entrance, and the turn-table and other cases of that nature, such as *Bridger* v. *R. R. Co.,* 25 S. C., 24; *Ry. Co.* v. *Beavers* (Ga.), 54 L. R. A., 314, and *Ryan* v. *Towar* (Mich.), 55 L. R. A., 310, where there is no indication of invitation or even willingness that the person injured should enter, the entry being merely a trespass to gratify curiosity, or to attain some other end peculiar to the particular individual.

The appellants insist, however, that the attempt of plaintiff's intestate to use a path between two railroad tracks with which he was unacquainted, in the darkness of night, was itself such carelessness on his part as to warrant the Court in dismissing the complaint on the ground of contributory negligence. Whether there was contributory negligence by Partlow in this respect, which was the proximate cause of his death, depends on the character of the path and possibly on many other circumstances, which are for the consideration of the jury. The case of *Jarrell* v. *R. R. Co.,* 58 S. C., 491, 36 S. E., 910, therefore, does not apply, for the reason that we cannot say, as a matter of law, that no other conclusion could be drawn than that plaintiff's intestate was guilty of contributory negligence, which was the proximate cause of his death. No detailed discussion of this point is attempted, because the case is to be heard by a jury.

Having reached the conclusion that the complaint states a cause of action, the remaining question is whether the defendants can be held jointly liable. It will be observed there is no allegation that any one of the three companies had improperly constructed its road. The charge is not that the cut which made the danger and into which Partlow fell was improperly constructed and located, but that owing to the kind of path that led to it over the right

33—67

of way of the Southern Railway and the Charleston and Western Carolina Railway, these defendants, after the cut was made, owed the duty to Partlow, entering it as one of the public, either to properly notify the public not to use the path, or to guard or warn by obstructions or lights.   The wrong, if any, was in inviting Partlow into a place of danger, known to them, but not to him, without warning or safeguard; and it was of no consequence that the danger was not created by these companies, but by the rightful action of another railroad in making the cut.   If under such circumstances he was injured, without fault on his part, they should be held liable.   On the other hand, the lessees of the Georgia, Carolina and Northern Railway cannot avoid liability on the ground that it had no part in allowing the use of the path and had never in any way consented to such an approach to its cut.   It is alleged the Georgia, Carolina and Northern Railway Company knew of the existence and nature of the path when it made the cut, which was dangerous to pedestrians because of its being across the path at right angles.   It will hardly be disputed that one who rightfully makes a ditch or cut, dangerous to travelers, across a well defined way, with knowledge that it has for a long time been used as a public way, and gives no warning and places no safeguard, will be liable to those who, without fault of their own, are injured thereby.   If there was any duty to safeguard the cut, it seems clear that it was a duty which devolved upon each of the defendants.   From this conclusion it results that the defendants were properly sued jointly. "If two or more persons owe to another the same duty, and by their common neglect of that duty he is injured, doubtless, the tort is joint, and upon well settled principles each, any, or all of the tort feasors may be held.   But when each of two or more persons owe to another a separate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the neglect of each was without concert, if such several neglects concurred and united together in causing injury, the tort is

equally joint, and the tort feasors are subject to a like liability." *Matthews* v. *R. R. Co.* (N. J.), 22 L. R. A., 262. See, also, *Peoria* v. *Simpson* (Ill.), 51 Am. Rep., 683. The allegations of this complaint would bring the case even within the Pennsylvania rule, which is much stricter as to joint liability than that above stated. *Klauder* v. *McGrath* (Pa.), 78 Am. Dec., 329. The cases of *Langhorne* v. *Ry. Co.* (Va.), 22 S. E., 158, and *Howard* v. *Union Traction Co.*, 195 Pa. St., 391, on which appellants rely, may be readily distinguished from this case.

It is quite obvious the allegations of this complaint are very different from those which were held insufficient in *Dorn* v. *Ry. Co.*, 58 S. C., 364, 36 S. E., 654.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY *concurs in the result.*